[Civ. No. 19089. Third Dist. July 17, 1980.]

NORMAN WILLIAMS COMPANY et al., Petitioners, v.
BAXTER RICE, as Director, etc., Respondent;
WINE & SPIRITS WHOLESALERS OF CALIFORNIA et al.,
Interveners.

COUNSEL

Feldman, Waldman & Kline, Leland R. Selna, Jr., Max Lieberman, George G. Weickhardt and Thomas W. Martin for Petitioners.

Harry M. Snyder and Luana L. Martilla as Amici Curiae on behalf of Petitioners.

George Deukmejian, Attorney General, and George J. Roth, Deputy Attorney General, for Respondent.

Pillsbury, Madison & Sutro, Noble K. Gregory, Parker A. Maddux, Gary W. Jackson, Richman & Garrett, Lionel Richman, Ivan J. Potts, Michael J. Shelley and James M. H. Ball as Amici Curiae on behalf of Respondent.

Ball, Hunt, Hart, Brown & Baerwitz, Joseph A. Ball, Anthony Murray, Michael J. Maloney, James Polish, Russell Swartz, William T. Chidlaw, Wyman, Bautzer, Rothman, Kuchel & Silbert, Frank Rothman, Christina A. Snyder and George Miron for Interveners.

Heller, Ehrman, White & McAuliffe, Stephen V. Bomse, White & Case, Macdonald Flinn, Edna R. Susman, Douglas W. Metz and Abraham Tunick as Amici Curiae on behalf of Respondent and Interveners.

OPINION

**REYNOSO, J.**—In this proceeding in writ of mandate we are called upon to determine the validity of that portion of Business and Professions Code section 23672 (as amended by Assem. Bill No. 499, Stats. 1979, ch. 280, § 1; hereinafter designation statute), which provides that a licensed importer shall not purchase or accept delivery of any brand

of distilled spirits unless designated as an authorized importer of such brand by the brand owner or its authorized representative. We conclude for reasons which we explain, that the designation statute is invalid. Accordingly, we issue the writ.[1]

This dispute arises out of the determination by the appellate courts of this state that California's alcoholic beverage price maintenance laws are invalid. Prior to 1978 the Business and Professions Code contained price maintenance provisions concerning all aspects of the alcoholic beverage industry. In *Rice* v. *Alcoholic Bev. etc. Appeals Bd.* (1978) 21 Cal.3d 431 [146 Cal.Rptr. 585, 579 P.2d 476, 96 A.L.R.3d 613], the California Supreme Court unanimously determined that the price maintenance provisions relating to the retail sale of distilled spirits were in violation of the Sherman Act (15 U.S.C. § 1 et seq.), and that no legitimate state interest outweighed the policies of the Sherman Act. (*Id.*, at p. 459.) The court declared the price maintenance provisions relating to retail sales of distilled spirits invalid. (*Ibid.*)

In *Capiscean Corp.* v. *Alcoholic Bev. etc. Appeals Bd.* (1979) 87 Cal.App.3d 996 [151 Cal.Rptr. 492], the First District Court of Appeal considered the validity of the price maintenance provisions relating to the retail sale of wine. The court found the decision in *Rice, supra*, controlling and declared those provisions to be invalid. The alcoholic beverage price maintenance laws reached this court in *Midcal Aluminum, Inc.* v. *Rice* (1979) 90 Cal.App.3d 979 [153 Cal.Rptr. 757]. We considered the validity of the price maintenance laws relating to the wholesale and retail sale of wine and concluded that those laws were invalid under the decision in *Rice, supra*.

An intervener in *Midcal Aluminum, Inc.* v. *Rice, supra*, the California Retail Liquor Dealers Association, petitioned the California Supreme Court for a hearing but that court declined to hear the case. The dealers association then sought certiorari from the United States Supreme Court, which was granted. (444 U.S. 824 [62 L.Ed.2d 31, 100 S.Ct. 45].) On March 3, 1980, the United States Supreme Court issued its decision in *California Liquor Dealers* v. *Midcal Aluminum* (1980) 445 U.S. 97 [63 L.Ed.2d 233, 100 S.Ct. 937].) The court unanimously (Brennan, J. not participating) affirmed this court's decision, and approved the California Supreme Court's opinion in *Rice, supra*.

---

[1]The interveners have moved to strike the documents filed as exhibits in support of the petition. We do not rely upon those documents in reaching our decision herein, and the motion is therefore denied as moot.

California's alcoholic beverage price maintenance laws are thus no longer enforced.

Prior to the judicial decisions striking down the alcoholic beverage price maintenance provisions of the Business and Professions Code, section 23672 of that code provided: "A licensed importer shall not purchase or accept delivery of any brand of distilled spirits unless he is designated as the authorized importer of such brand by the licensee who filed the minimum retail price schedule for such brand pursuant to Section 24755. Such distilled spirits imported into California shall come to rest at the warehouse of the licensed importer or an authorized warehouse for the account of such licensed importer, before sale and delivery to a retail licensee." When the price maintenance provisions were declared invalid, the Department of Alcoholic Beverage Control took the position that section 23672 became unenforceable because there were no longer any minimum retail price schedules required to be filed.

Among the petitioners are licensed importers and wholesalers of distilled spirits as well as licensed retailers of distilled spirits. After the price maintenance provisions of the Business and Professions Code were declared invalid the importer petitioners secured sources of supply of national brand distilled spirits in Oklahoma, referred to as the "Oklahoma connection." Under Oklahoma law a distiller who chooses to sell distilled spirits in Oklahoma must sell to all licensed Oklahoma wholesalers and may not discriminate either as to price or as to quantity. (12 Okla. Stats. (1961) tit. 37, § 501 et seq.) The distiller is required to sell distilled spirits at a rate which is no higher than the lowest rate at which the seller sells in any other state. (*Id.*, § 536.1.) The licensed wholesalers may sell to any licensed retailer or wholesaler within Oklahoma, and may sell distilled spirits out of Oklahoma to "qualified persons." (*Id.*, § 521, subd. (e).) The importer petitioners have been able to purchase national brand distilled spirits in Oklahoma, import such distilled spirits to California, and sell these products to licensed retailers at prices below the suggested wholesale prices which the distillers provide to their designated wholesalers.

The amendment of Business and Professions Code section 23672 provided for by Assembly Bill No. 499 amends the language of that section to read: "A licensed importer shall not purchase or accept delivery of any brand of distilled spirits unless he is designated as an authorized importer of such brand by the brand owner or his authorized agent.

Such distilled spirits imported into California shall come to rest at the warehouse of the licensed importer or an authorized warehouse for the account of such licensed importer, before sale and delivery to a retail licensee." (Stat. 1979, ch. 280, § 1.) This provision would effectively preclude the importer petitioners from competing for the wholesale market of certain national brands, because they have been denied designation as authorized importers by the brand owners. The petitioners thus will be unable to secure these brands from the distillers and are precluded from purchasing such brands from Oklahoma sellers.

The importer petitioners seek a peremptory writ of mandate or alternatively prohibition ordering the Department of Alcoholic Beverage Control not to enforce section 23672 so that they may continue to compete in the wholesale distilled spirit market with national brands obtained from Oklahoma sellers. The retailer petitioners seek such a writ so that they may continue to purchase national brand distilled spirits at prices below the distillers' suggested wholesale prices. We issued an alternative writ of mandate and stayed enforcement of the statute pending the return to the writ and further order of this court.

The basis of the judicially declared invalidity of the California alcoholic beverage price maintenance provisions was the Sherman Antitrust Act, 15 United States Code section 1 et seq. (*Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra*, 21 Cal.3d at p. 459; *Midcal Aluminum, Inc.* v. *Rice, supra*, 90 Cal.App.3d at p. 984; *Capiscean* v. *Alcoholic Bev. etc. Appeals Bd., supra*, 87 Cal.App.3d at pp. 999-1000.) In view of the United States Supreme Court's approval of the California appellate opinions, it is clear that the Sherman Act applies to interstate commerce in alcoholic beverages. (*California Liquor Dealers* v. *Midcal Aluminum, Inc., supra*, 445 U.S. at pp. 108-110 [63 L.Ed.2d at p. 245].) We thus consider whether Business and Professions Code section 23672, as amended, is in violation of the Sherman Act.[2]

The California Supreme Court's opinion in *Rice* is instructive on the course of the inquiry we must make. We must first consider whether

[2]The argument is made that this court does not have jurisdiction to consider the contentions raised relating to the Sherman Act, since suits arising under that act must be brought in federal court. We reject this contention. Petitioners are not seeking a private remedy against private parties in this action. They are suing to enjoin enforcement of a state statute which is alleged to be invalid under the Sherman Act. We may consider whether the statute is valid in a proceeding for writ of mandate. (See *Midcal Aluminum, Inc.* v. *Rice, supra*, 90 Cal.App.3d 984; *Alpha Beta Mkts.* v. *Amal. Meat Cutters* (1956) 147 Cal.App.2d 343, 351 [305 P.2d 163].)

the scheme, in the absence of governmental sanction, would violate the Sherman Act. If the scheme would violate the Sherman Act in the absence of governmental sanction, we must then consider whether governmental sanction for the scheme validates the scheme despite the Sherman Act. That inquiry is two-fold. It must be determined whether the marketing scheme is within the state action exception to the Sherman Act as stated in *Parker* v. *Brown* (1942) 317 U.S. 341 [87 L.Ed. 315, 87 S.Ct. 315], or whether the Twenty-first Amendment to the United States Constitution reserves to the state the power to authorize such a scheme. (*Rice, supra,* 21 Cal.3d at pp. 439-447.)

### The Sherman Act

■ The purpose of the Sherman Act "...is to prevent or suppress devices or practices which create monopolies or restrain trade or commerce by suppressing or restricting competition and obstructing the course of trade." (54 Am.Jur.2d, Monopolies, etc., § 1, p. 668; fns. omitted.) "The Sherman Act was designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade. It rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress, while at the same time providing an environment conducive to the preservation of our democratic political and social institutions. But even were that premise open to question, the policy unequivocally laid down by the Act is competition." (*Northern Pac. R. Co.* v. *United States* (1958) 356 U.S. 1, 4 [2 L.Ed.2d 545, 549, 78 S.Ct. 514].)

The judicial opinions interpreting the Sherman Act have provided a judicial gloss to its meaning. Although the act is literally all-encompassing, the courts have construed it as precluding only actions which "unreasonably" restrain competition. (*Id.,* 356 U.S. at p. 5 [2 L.Ed.2d at p. 549].) ■ There are, however, certain practices which, because of their pernicious effect on competition and lack of any redeeming virtue, are conclusively presumed to be unreasonable. (*Ibid.*) This is the doctrine of per se illegality. ■ All actions which are not per se unreasonable are subject to the "rule of reason." (*Continental T. V. Inc.* v. *GTE Sylvania Inc.* (1977) 433 U.S. 36, 49-50 [53 L.Ed.2d 568, 580, 97 S.Ct. 2549].) Under the rule of reason the fact finder weighs all of the circumstances of a case in deciding whether a restrictive practice should

be prohibited as imposing an unreasonable restraint on competition. (*Ibid.*)

■ Among the types of conduct which have been declared per se illegal are tying arrangements, agreements among competitors to divide markets or allocate customers, group boycotts, agreements to limit production, and price fixing. (54 Am.Jur.2d, Monopolies, etc., *supra*, § 32, p. 687.) Price fixing, without more, is illegal because it eliminates one form of competition. (*U.S.* v. *Univis Lens Co.* (1941) 316 U.S. 241, 252 [86 L.Ed. 1408, 1419, 62 S.Ct. 1088]; *United States* v. *Trenton Potteries Co.* (1927) 273 U.S. 392, 397 [71 L.Ed. 700, 706, 47 S.Ct. 377, 50 A.L.R. 989].) Group boycotts are per se illegal because they "cripple the freedom of traders and thereby restrain their ability to sell in accordance with their own judgment," thus restraining competition. (*Kiefer-Stewart Co.* v. *Seagram & Sons* (1951) 340 U.S. 211, 213 [95 L.Ed. 219, 223, 71 S.Ct. 259]. See also *Klor's* v. *Broadway-Hale Stores* (1959) 359 U.S. 207, 212 [3 L.Ed.2d 741, 745, 79 S.Ct. 705].) Tying arrangements, whereby a seller agrees to sell one product but only on the condition that the buyer purchase a different product as well, curb competition with respect to the tied product and are thus illegal per se. (See *Northern Pac. R. Co.* v. *United States, supra*, 356 U.S. at pp. 5-6 [2 L.Ed.2d at p. 550].) In fact, all per se violations are declared to be so because by their nature they are manifestly anticompetitive. (See *Continental T. V. Inc.* v. *GTE Sylvania Inc., supra*, 433 U.S. at pp. 49-50 [53 L.Ed.2d at p. 580].)

■ Petitioners attempt to analogize Business and Professions Code section 23672 to certain per se violations of the Sherman Act in order to demonstrate its invalidity. The opposition to the petition argue that the statute does not clearly come within a declared per se violation and must be upheld in this proceeding. It is difficult to analyze the designation statute in terms of common violations of the Sherman Act because of the unique nature of the statute. The designation statute gives brand owners the unfettered power to restrain competition, not by relying upon any artifice such as tying arrangements or group boycotts, but by merely deciding who may and who may not compete. In effect, that statute gives one private party the unlimited power to tell an independent licensed California buyer that he may not buy from an independent licensed Oklahoma seller. A more clear power to restrain interstate trade is difficult to imagine.

It is suggested in opposition to the petition that brand owners have the inherent power to designate importers to whom they will sell and that the designation statute merely recognizes this power. We emphatically reject this construction of the statute. The statute goes much further than to merely allow a manufacturer to determine to whom it will sell; it allows the manufacturer to forbid others to sell to a disfavored importer. We are not concerned with any contractual channel of distribution a brand owner might create or use; we are concerned with the state-provided authority to prevent trade among others. In this respect it is irrelevant that the statute gives brand owners the power to restrain intrabrand competition rather than interbrand competition. (See *United States* v. *Topco Associates* (1971) 405 U.S. 596, 610-611 [31 L.Ed.2d 515, 527, 92 S.Ct. 1126].)

The opposition to the petition cite *Continental T. V. Inc.* v. *GTE Sylvania, Inc., supra*, 433 U.S. 36, in support of the contention that the power provided to brand owners by the designation statute does not violate the Sherman Act. In that case Sylvania sold televisions through a franchise plan. Sylvania limited the number of franchises for any given area and required each franchisee to sell only from the location or locations at which he was franchised. A franchise did not constitute an exclusive territory and Sylvania retained the discretion to increase the number of retailers in an area. Continental was a successful San Francisco franchisee that sought and was refused permission to open a franchise in Sacramento. On certiorari the United States Supreme Court considered whether the franchise plan was a per se violation of the Sherman Act and concluded that it was not. A vertical restriction of territory, unlike a horizontal restriction, must be judged under the rule of reason. (*Id.*, 433 U.S. at p. 59 [53 L.Ed.2d at p. 585].)

We find the decision in *Continental T. V. Inc.* v. *GTE Sylvania Inc.* to be inapposite to the statutory provision which we consider. That case involved a manufacturer's chosen method of product distribution enforced by a refusal to sell to retailers outside of their assigned territories. Petitioners herein do not attack the decision of distillers to refuse to trade with them; rather, they attack the state provided authority of the distillers to prohibit them from trading with others. Nothing in *Continental T. V. Inc.* v. *GTE Sylvania Inc.* authorizes a state to delegate such power to a private party.

Article I, section 8, clause 3 of the United States Constitution gives to the federal government the exclusive power to regulate interstate

commerce. Pursuant to that power Congress passed the Sherman Act, with its unequivocal policy of encouraging competition. (*Northern Pac. R. Co.* v. *United States, supra,* 356 U.S. at p. 4 [2 L.Ed.2d at p. 549].) Business and Professions Code section 23672 gives private parties the unqualified power to prevent interstate commerce between other private parties, and uses the coercive power of the state to enforce such power. That section does not merely authorize a private party to engage in practices which may restrain interstate trade; rather, it gives private parties the unfettered power to forbid interstate trade between other private parties. Such a grant of authority is in direct contravention of the express terms of the commerce clause and the Sherman Act. We conclude that Business and Professions Code section 23672 is invalid unless the state action exception to the Sherman Act or the Twenty-first Amendment to the United States Constitution authorizes such a delegation of authority.

### *The State Action Exception*

■ There can be no doubt that the designation statute involved herein is not within the state action exception to the Sherman Act. In *California Liquor Dealers* v. *Midcal Aluminum, Inc., supra,* 445 U.S. 97, the Supreme Court noted two standards for antitrust immunity. First, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy; and second, the policy must be actively supervised by the state itself. (*Id.,* 445 U. S. 97 at p. 105 [63 L.Ed.2d 233 at p. 243].) The court found California's alcoholic beverage price maintenance laws to be without the state action exception because "The State simply authorizes price-setting and enforces the prices established by private parties. The State neither establishes prices nor reviews the reasonableness of the price schedules; nor does it regulate the terms of fair trade contracts. The State does not monitor market conditions or engage in any 'pointed reexamination' of the program. The national policy in favor of competition cannot be thwarted by casting such a gauzy cloak of state involvement over what is essentially a private price fixing arrangement." (*Ibid.*; fn. omitted.)

■ The designation statute involved is likewise devoid of state involvement. The state has specified no standard to be applied by the private parties in reaching their decisions to forbid competition, does not oversee the choices made, and does not otherwise participate. The state, for its part, has licensed the importer petitioners to engage in the

importation of alcoholic beverages, but then provided other private parties with the unfettered power to restrain them from engaging in the trade for which they are licensed. Business and Professions Code section 23672 is clearly not within the state action exception to the Sherman Act.

### The Twenty-first Amendment

In *California Liquor Dealers* v. *Midcal Aluminum, supra*, the Supreme Court held "...that there is no bright line between federal and state powers over liquor. The Twenty-First Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system. Although States retain substantial discretion to establish other liquor regulations, those controls may be subject to the federal commerce power in appropriate situations. The competing state and federal interests can be reconciled only after careful scrutiny of those concerns in a 'concrete case.'" (*Id.*, 445 U. S. 97 at p. 110 [63 L.Ed.2d at p. 246].) The court considered California's interest in its price maintenance laws and found that "[t]he unsubstantiated state concerns put forward in this case simply are not of the same stature as the goals of the Sherman Act." (*Id.*, 445 U. S. 97 at p. 114 [63 L.Ed.2d 233 at p. 248].)

We reject the contention of those opposed to the petition for a writ of mandate that the designation statute is within the state's virtual complete control over whether to permit importation or sale of liquor and how to structure the distribution system. California has determined to permit the importation of liquor into the state by private parties and has established a distribution system of which the petitioners are a licensed part. In division 9 of the Business and Professions Code the state has provided detailed requirements for those who desire to engage in the distribution of alcoholic beverages and the petitioners have complied with those requirements and obtained state approval to participate in the distribution of liquor. The designation statute does not relate to the decision whether to permit the importation and sale of liquor and is not a part of the establishment of the channels of distribution. The designation statute, like the price maintenance laws, is precisely the type of regulation which must be reconciled with the federal interests in interstate commerce.

In the balancing process we are required to determine what policies are furthered by the state statute, whether that statute clearly vindi-

cates those policies, and whether and to what degree the policy underlying the Sherman Act is undermined by that statute. (*Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 21 Cal.3d at p. 451.) In *California Liquor Dealers* v. *Midcal Aluminum, supra,* the United States Supreme Court noted that the federal interest in enforcing the national policy in favor of competition is both familiar and substantial, citing a prior decision in which it was stated: "'Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms.'" (*California Liquor Dealers* v. *Midcal Aluminum, supra,* 445 U.S. 97 at p. 110 [63 L.Ed.2d 233 at p. 246]; citing *United States* v. *Topco Associates, supra,* 405 U.S. at p. 610 [31 L.Ed.2d at p. 527].) The grant of power to a private party to prohibit interstate commerce between other private parties and to limit competition in the California wholesale market results in a complete undermining of the federal policies embodied in the Sherman Act. We must consider whether there is a sufficient state interest to outweigh this result.

Those opposed to the petition for a writ of mandate have suggested several state interests purportedly served by the designation statute. We are told that the statute will facilitate the monitoring and tracing of imported distilled spirits and aid in the collection of excise taxes, assist in the maintenance of the three-tier system of distribution,[3] preserve the competitive viability of small retailers, prevent predatory business practices, protect the brand owners' rights to their goodwill,[4] promote stable labor relations, and promote temperance.

---

[3]The designation statute is actually directly contrary to the public policy behind the three-tier distribution system. The three-tier system was established to maintain the independence of the various levels of the liquor industry and to prevent the integration of manufacturing, wholesale and retail functions. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1964) 61 Cal.2d 305, 309 [38 Cal.Rptr. 409, 392 P.2d 1].) The designation statute reimposes the dependency of wholesalers upon brand owners which the three-tier system was designed to prevent.

[4]It is difficult to understand how the brand owners believe that their "right to their goodwill" could justify the type of unlimited power to restrain competition authorized by the designation statute. Federal copyright, patent and trade mark laws are designed to protect such rights and those laws preclude the control over the distribution system granted by the designation statute. A seller of goods may attempt to contractually limit resale or refuse to sell to those who resell in violation of its policies, but the Sherman Act renders such action illegal if it unreasonably restrains trade. The type of control over competition granted by the designation statute is simply antithetical to a free enterprise economy.

We do not perceive that the designation statute will clearly vindicate these interests. The California liquor industry is heavily regulated and there are numerous provisions designed to insure that each legitimate state interest is fully realized. The broad grant of anticompetitive power to private parties will certainly vindicate private concerns, but would appear to be relatively insignificant in vindicating state interests. In this respect it must be noted that the designation statute is drastically overbroad. It provides no standards which brand owners are to apply in reaching their decisions. Brand owners are given the unqualified power to restrain interstate trade without regard to whether the exercise of that power actually furthers a state interest and despite the fact that their decisions might actually impede state interests. Further, the decisions of the brand owners are final, there is no review by the state agency charged with enforcing those decisions to ensure that state interests are in fact furthered. As noted by the United States Supreme Court concerning decision making which affects competition: "Private forces are too keenly aware of their own interests in making such decisions...." (*United States v. Topco Associates, supra*, 405 U.S. at p. 611 [31 L.Ed.2d at p. 528].)

Another important factor in the balancing process we must undertake is whether there are other means by which the state interest may be served without running afoul of the Sherman Act. (*Rice v. Alcoholic Bev. etc. Appeals Bd., supra*, 21 Cal.3d at p. 458.) There are clear alternatives to the designation statute which will further state interests. The importation and sale of liquor is subject to heavy regulation by the state. Licensing restrictions and reporting requirements, as well as regulations to control and prevent unfair trade practices, are available to vindicate state interests. Each legitimate state interest in the importation and sale of liquor may be properly served without resort to a statute in direct contravention to the policies of the Sherman Act.

The most important alternative means of promoting the asserted state interests is exemplified by the regulatory programs upheld against attack under the Sherman Act in *Parker v. Brown, supra*, 317 U.S. 341; and *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.* (1978) 439 U.S. 96 [58 L.Ed.2d 361, 99 S.Ct. 403]. In each of those cases California furthered its interests by authorizing private action which would violate the Sherman Act if undertaken by private parties without governmental sanction. In each of those cases the regulatory programs were upheld by the United States Supreme Court because California

did not merely authorize a violation of the Sherman Act, it involved itself in the decision-making process. In each case a state agency maintained control and subjected the private party decisions to pointed reexamination to insure that the policies of the Sherman Act were not unnecessarily subordinated to state policy. (See *Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra*, 21 Cal.3d at pp. 441-445.)

Under the California Constitution, the Department of Alcoholic Beverage·Control is given the exclusive power to license the importation and distribution of liquor in California. (Cal. Const., art. XX, § 22.) The Alcoholic Beverage Control Appeals Board is established to review decisions of the department. (*Ibid.*) Despite the ready availability of these regulatory agencies to control and review decisions of private parties in regards to the importation of liquor, the designation statute confers absolute and unqualified power upon private parties to restrain interstate commerce in distilled spirits. That power may be exercised by the private parties without regard to the potentially devastating effects it may have upon federal interests and without regard to whether it actually serves state interests.

We find that the substantial federal policies of the Sherman Act are violated by the liquor designation statute and, in light of clear alternatives to that statute, the state interests sought to be achieved are not sufficient to outweigh those policies. We conclude that Business and Professions Code section 23672, as amended by Assembly Bill No. 499 (Stats. 1979, ch. 280, § 1), is invalid to the extent it authorizes private action in restraint of trade.

In view of our decision it is not necessary to consider petitioners' remaining contentions and we indicate no view as to how we would resolve those issues. Further, we are not concerned with that portion of Business and Professions Code section 23672 which requires that imported distilled spirits come to rest at the warehouse of the licensed importer or an authorized warehouse for the account of such licensed importer before sale to a retailer, and our decision shall not preclude enforcement of that requirement.

Let a peremptory writ of mandate issue ordering respondent to refrain from enforcing that portion of Business and Professions Code section 23672 which provides: "A licensed importer shall not purchase or accept delivery of any brand of distilled spirits unless he is designat-

ed as an authorized importer of such brand by the brand owner or his authorized agent."

Puglia, P. J., and Evans, J., concurred.

The petitions of respondent and interveners for a hearing by the Supreme Court were denied September 24, 1980. Manuel, J., was of the opinion that the petitions should be granted.