RICE, DIRECTOR, DEPARTMENT OF ALCOHOLIC
BEVERAGE CONTROL OF CALIFORNIA *v.* NORMAN
WILLIAMS CO. ET AL.

No. 80–1012.  Argued April 21, 1982—Decided July 1, 1982*

---

*Together with No. 80–1030, *Bohemian Distributing Co.* v. *Norman Williams Co. et al.;* and No. 80–1052, *Wine & Spirits Wholesalers of California* v. *Norman Williams Co. et al.*, also on certiorari to the same court.

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, MARSHALL, BLACKMUN, POWELL, and O'CONNOR, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, in which WHITE, J., joined, *post*, p. 665.

*John R. McDonough* argued the cause for petitioners in Nos. 80–1030 and 80–1052. With him on the briefs for petitioner in No. 80–1052 were *Joseph A. Ball, Michael J.*

*Maloney, James Polish,* and *William T. Chidlaw. Frank Rothman, Christina A. Snyder, George Miron,* and *Frank H. Easterbrook* filed briefs for petitioner in No. 80–1030.

*George J. Roth,* Deputy Attorney General of California, argued the cause for petitioner in No. 80–1012. With him on the brief was *George Deukmejian,* Attorney General.

*George G. Weickhardt* argued the cause for respondents. With him on the brief was *Leland R. Selna, Jr.*†

JUSTICE REHNQUIST delivered the opinion of the Court.

Respondents in these cases obtained from the California Court of Appeal an extraordinary writ prohibiting the California Department of Alcoholic Beverage Control from enforcing an amendment to the State's liquor statutes. That court held that because the conduct contemplated by the amendment was *per se* illegal under the Sherman Act, the statute on its face was invalid pursuant to the Supremacy Clause of the United States Constitution. 108 Cal. App. 3d 348, 166 Cal. Rptr. 563 (1980). We conclude that the California Court of Appeal was mistaken in its application of antitrust and pre-emption principles, and we reverse its judgment.

I

Alcoholic beverages may be brought into California from outside the State for delivery or use within the State *only* if the beverages are consigned to a licensed importer. Cal. Bus. & Prof. Code Ann. § 23661 (West Supp. 1982). In 1979, the California Legislature amended the State's alcoholic beverage control laws to provide that a "licensed importer shall

---

†Briefs of *amici curiae* urging reversal were filed by *Noble K. Gregory* and *Parker A. Maddux* for the Distilled Spirits Council of the United States, Inc.; by *Ralph J. Savarese* for Heublein, Inc.; and by *Macdonald Flinn, Douglas W. Metz,* and *Abraham Tunick* for the Wine and Spirits Wholesalers of America, Inc., et al.

*Harry M. Snyder* filed a brief for the Consumers Union of United States, Inc., as *amicus curiae* urging affirmance.

not purchase or accept delivery of any brand of distilled spirits unless he is designated as an authorized importer of such brand by the brand owner or his authorized agent." § 23672. This challenged statute, which was to become effective on January 1, 1980, is understandably referred to as a "designation statute."[1]

California apparently enacted its designation statute in response to the effects of Oklahoma's alcoholic beverage laws. At the time, Oklahoma's statutes were understood to require any distiller or brand owner selling its products to Oklahoma wholesalers to sell to *all* wholesalers on a nondiscriminatory basis.[2] Because of the perceived extraterritorial effect of Oklahoma's "open-wholesaling" statutes, a licensed California importer who was unable to obtain distilled spirits through the distiller's established distribution system could obtain them from Oklahoma wholesalers. As a result, a distiller who desired to sell its products to Oklahoma wholesalers was unable to rely on contractual undertakings to determine which California wholesalers would handle its products. California's designation statute, therefore, sought to close off the "Oklahoma connection" to California importers not authorized by the distiller to deal in its products.[3]

---

[1] Section 23672 is actually an amended version of a statute invalidated by the California Supreme Court in *Rice* v. *Alcoholic Beverage Control Appeals Bd.*, 21 Cal. 3d 431, 579 P. 2d 476 (1978), because its minimum price system constituted resale price maintenance in violation of the Sherman Act. See *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U. S. 97, 100–102 (1980).

[2] Okla. Stat., Tit. 37, § 533 (1981).

[3] The Oklahoma Supreme Court, however, has recently closed off the "Oklahoma connection" by holding that the open-wholesaling statute does not apply to alcoholic beverages destined for consumption in other States. *Central Liquor Co.* v. *Oklahoma Alcoholic Beverage Control Bd.*, 640 P. 2d 1351 (1982). What made the "Oklahoma connection" particularly attractive to California wholesalers was that Oklahoma required distillers to sell to Oklahoma wholesalers at the lowest price charged for its products anywhere in the United States. See Okla. Stat., Tit. 37, § 536.1 (1981). The demise of the "Oklahoma connection," however, has no bearing on our disposition of the legal issues in these cases.

Prior to the effective date of the designation statute, respondents, liquor importers who were benefiting from the "Oklahoma connection," sought an extraordinary writ from the California Court of Appeal enjoining the enforcement of the designation statute. The Court of Appeal agreed with respondents that the designation statute on its face conflicted with § 1 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. § 1.[4] According to that court, the designation statute would result, in all cases, in a *per se* violation of the Sherman Act, because it "gives brand owners the unfettered power to restrain competition . . . by merely deciding who may and who may not compete." 108 Cal. App. 3d, at 356, 166 Cal. Rptr., at 569. The Court of Appeal distinguished *Continental T. V., Inc.* v. *GTE Sylvania Inc.*, 433 U. S. 36 (1977), in which we held that vertical nonprice restraints are to be judged under the "rule of reason" rather than under a *per se* rule of illegality, on the ground that respondents did not attack the distiller's decision to refuse to do business with them, but "the state provided authority of the distillers to prohibit them from trading with others." 108 Cal. App. 3d, at 357, 166 Cal. Rptr., at 570.

The Supreme Court of California denied review. We granted certiorari, 454 U. S. 1080 (1981), and now reverse.

---

[4] Although it did not phrase its conclusion in these terms, it is evident that the California Court of Appeal concluded that the designation statute was pre-empted by the Sherman Act. The court properly recognized that it had no jurisdiction to entertain a lawsuit brought pursuant to § 4 of the Clayton Act, 15 U. S. C. § 15. 108 Cal. App. 3d 348, 354, n. 2, 166 Cal. Rptr. 563, 568, n. 2 (1980). Rather than seeking a private remedy against private parties, respondents in these cases sought to enjoin the enforcement of a state statute that they contend to be unconstitutional under the Supremacy Clause in its every application. Indeed, because respondents brought this suit prior to the effective date of the statute, respondents did not, and could not, challenge any vertical restraints actually employed by a distiller pursuant to the statute. Instead, respondents challenge the statute on its face without consideration of particular circumstances.

## II

### A

In determining whether the Sherman Act pre-empts a state statute, we apply principles similar to those which we employ in considering whether any state statute is pre-empted by a federal statute pursuant to the Supremacy Clause. As in the typical pre-emption case, the inquiry is whether there exists an irreconcilable conflict between the federal and state regulatory schemes. The existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of the state statute. A state regulatory scheme is not pre-empted by the federal antitrust laws simply because in a hypothetical situation a private party's compliance with the statute might cause him to violate the antitrust laws. A state statute is not pre-empted by the federal antitrust laws simply because the state scheme might have an anticompetitive effect. See, e. g., *New Motor Vehicle Bd. of Cal.* v. *Orrin W. Fox Co.*, 439 U. S. 96, 110–111 (1978); *Exxon Corp.* v. *Governor of Maryland*, 437 U. S. 117, 129–134 (1978); *Joseph E. Seagram & Sons, Inc.* v. *Hostetter*, 384 U. S. 35, 45–46 (1966).

A party may successfully enjoin the enforcement of a state statute only if the statute on its face irreconcilably conflicts with federal antitrust policy. In *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U. S. 97 (1980), we examined a statute that *required* members of the California wine industry to file fair trade contracts or price schedules with the State, and provided that if a wine producer had not set prices through a fair trade contract, wholesalers *must* post a resale price schedule for that producer's brands. We held that the statute facially conflicted with the Sherman Act because it *mandated* resale price maintenance, an activity that has long been regarded as a *per se* violation[5] of the Sher-

---

[5] Under established antitrust principles, *per se* rules of illegality are appropriate only when they apply to practices " 'which because of their perni-

man Act. *Id.*, at 102–103; see *Dr. Miles Medical Co.* v. *John D. Park & Sons Co.*, 220 U. S. 373, 407–409 (1911).

By contrast, in *Joseph E. Seagram & Sons, Inc.* v. *Hostetter, supra,* we rejected a facial attack upon § 9 of New York's Alcoholic Beverage Control Law,[6] which required retailers and wholesalers to file monthly price schedules with the State Liquor Authority accompanied by an affirmation that the prices charged were no higher than the lowest price at which sales were made anywhere in the United States during the preceding month. *Id.*, at 39–40. The Court found no clear repugnancy between § 9 and the federal antitrust laws:

> "The bare compilation, without more, of price information on sales to wholesalers and retailers to support the affirmations filed with the State Liquor Authority would not of itself violate the Sherman Act. Section 9 imposes no irresistible economic pressure on the appellants to violate the Sherman Act in order to comply with the requirements of § 9. On the contrary, § 9 appears firmly anchored to the assumption that the Sherman Act will deter any attempts by the appellants to preserve their New York price level by conspiring to raise the prices at which liquor is sold elsewhere in the country. . . .
>
> "Although it is possible to envision circumstances under which price discriminations proscribed by the Robinson-Patman Act might be compelled by § 9, the existence of such potential conflicts is entirely too specula-

cious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.'" *Continental T. V., Inc.* v. *GTE Sylvania Inc.*, 433 U. S. 36, 50 (1977), quoting *Northern Pacific R. Co.* v. *United States*, 356 U. S. 1, 5 (1958). It is not surprising, therefore, that a statute which requires practices *per se* illegal under the Sherman Act may be subject to a facial challenge under the Supremacy Clause.

[6] As with the instant case, because the challenged statute had not as yet been put into effect, this Court in *Hostetter* was presented only with a facial challenge to its constitutionality.

tive in the present posture of this case . . . ." *Id.*, at 45–46 (citations omitted).

Our decisions in this area instruct us, therefore, that a state statute, when considered in the abstract, may be condemned under the antitrust laws only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute. Such condemnation will follow under § 1 of the Sherman Act when the conduct contemplated by the statute is in all cases a *per se* violation. If the activity addressed by the statute does not fall into that category, and therefore must be analyzed under the rule of reason, the statute cannot be condemned in the abstract. Analysis under the rule of reason requires an examination of the circumstances underlying a particular economic practice, and therefore does not lend itself to a conclusion that a statute is facially inconsistent with federal antitrust laws.

It remains for us to determine whether a distiller's invocation of the designation statute would be subject in all cases to a *per se* rule of illegality under the Sherman Act.

B

We held in *GTE Sylvania* that a manufacturer's use of vertical nonprice restraints is not *per se* illegal. Because restraints on intrabrand competition may promote interbrand competition, we concluded that nonprice vertical restraints should be scrutinized under the rule of reason. 433 U. S., at 57–59. After our decision in *GTE Sylvania*, it cannot be said that every attempt by a manufacturer to restrain competition in its own products is illegal under the Sherman Act.

California's designation statute merely enforces the distiller's decision to restrain intrabrand competition. It permits the distiller to designate which wholesalers may import the distiller's products into the State. It prevents an unauthorized wholesaler from obtaining the distiller's products from outside the distiller's established distribution chain.

The designation statute does not *require* the distiller to impose vertical restraints of any kind; that is a matter for it to determine. The *number* of importers which may be designated by the distiller is not limited; the designated importer is not required to sell the imported brand to retailers within a specified area or from a specified location within the State.

It is irrelevant for our purposes that the distiller's ability to restrict intrabrand competition in California has the imprimatur of a state statute. *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 439 U. S., at 110–111.[7] The effect of the statute is simply to counteract the perceived extraterritorial effects of Oklahoma's alcoholic beverage laws, which, as once understood, operated to deprive the distiller of control over its distribution system nationwide. Thus, California's designation statute merely restored what Oklahoma had taken away: the distiller's ability to determine which wholesalers may import its products into California.

In these respects, therefore, we find these cases to be much like *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U. S. 35 (1966). As in *Hostetter*, upholding the validity of the designation statute will not insulate a distiller's invocation of the statute from scrutiny under the Sherman Act. The manner in which a distiller utilizes the designation statute and the arrangements a distiller makes with its wholesalers will be subject to Sherman Act analysis under the rule of reason.[8] There is no basis, however, for condemning the statute itself by force of the Sherman Act.[9]

---

[7] This is merely another way of stating that the designation statute might have an anticompetitive effect when applied in concrete factual situations. See *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 439 U. S., at 110–111. We have explained, however, that this is insufficient to declare the statute itself void on its face.

[8] It is certainly conceivable, however, that particular *conduct* pursuant to the statute might be subject to a challenge under one or more of the established *per se* rules of illegality.

[9] Because of our resolution of the pre-emption issue, it is not necessary for us to consider whether the statute may be saved from invalidation

## III

Respondents seek to support the judgment of the Court of Appeal on three federal grounds not considered by the court below. None of these contentions have merit.

## A

Respondents contend that the California designation statute is pre-empted by § 5(a) of the Federal Alcohol Administration Act, 49 Stat. 981, as amended, 27 U. S. C. § 205(a).[10] Section 5(a) prohibits a distiller or wholesaler from establishing exclusive *retail* outlets. See S. Rep. No. 1215, 74th Cong., 1st Sess., 6–7 (1935); H. R. Rep. No. 1542, 74th Cong., 1st Sess., 10–11 (1935). In other words, § 5(a) prohibits a distiller or wholesaler from requiring a *retailer* to buy only the distiller's or wholesaler's products to the exclusion of the products of other distillers or wholesalers. The statute does not prohibit a distiller from requiring its wholesalers to purchase the distiller's products from the distiller itself rather

---

under the doctrine of *Parker* v. *Brown,* 317 U. S. 341 (1943), or under the Twenty-first Amendment.

[10] Section 5(a) provides:

"It shall be unlawful for any person engaged in business as a distiller, brewer, rectifier, blender, or other producer, or as an importer or wholesaler, of distilled spirits, wine, or malt beverages, or as a bottler, or warehouseman and bottler, of distilled spirits, directly or indirectly or through an affiliate:

"(a) Exclusive outlet

"To require, by agreement or otherwise, that any retailer engaged in the sale of distilled spirits, wine, or malt beverages, purchase any such products from such person to the exclusion in whole or in part of distilled spirits, wine, or malt beverages sold or offered for sale by other persons in interstate or foreign commerce, if such requirement is made in the course of interstate or foreign commerce, or if such person engages in such practice to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in any such products, or if the direct effect of such requirement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such retailer in interstate or foreign commerce." 27 U. S. C. § 205(a).

than from a third party.[11]   California's statute in no way requires exclusive retail outlets.   By its terms, the designation statute does not even require exclusive wholesale arrangements.   One might be able to hypothesize an arrangement enforced by the designation statute that might be prohibited by § 5(a), but this is insufficient to invalidate a state statute pursuant to the Supremacy Clause.   "To hold otherwise would be to ignore the teaching of this Court's decisions which enjoin seeking out conflicts between state and federal regulation where none clearly exists."   *Huron Portland Cement Co.* v. *Detroit,* 362 U. S. 440, 446 (1960).

B

Respondents contend that the designation statute denies them due process of law.   According to respondents, California has established a "second tier of private licensing over the state's licensing process," and therefore procedural due process protections apply with regard to the distiller's designation decisions.   Brief for Respondents 36.

We find this contention without merit.   The designation statute merely enforces the distiller's decision to deny permission to a California wholesaler to deal in the distiller's products.   We do not think that respondents possess any constitutionally protected liberty or property interest in obtaining the distiller's permission.   Thus, the Due Process Clause is not offended by the wholesaler's inability to challenge the distiller's decisionmaking.   What respondents are really challenging is the California Legislature's decision to give such a power to the distiller without establishing any criteria to govern the exercise of that power.   The Due Process Clause does not authorize this Court to assess the wisdom of the California Legislature's decision.   See *Ferguson* v. *Skrupa,* 372 U. S. 726, 729–732 (1963).

---

[11] See 27 CFR §§ 8.3, 8.11, 8.23 (1982).

## C

Finally, respondents contend that the designation statute violates the Equal Protection Clause because it discriminates between designated and nondesignated wholesalers. There can be little doubt but that the designation statute is rationally related to the statute's legitimate purposes. *Minnesota v. Clover Leaf Creamery Co.*, 449 U. S. 456, 461–470 (1981). The designation statute enables the distiller to place restraints on intrabrand competition in order to foster interbrand competition. It is not our province to determine whether or not California consumers would be better off had the California Legislature decided not to close off the "Oklahoma connection." See *Vance v. Bradley*, 440 U. S. 93, 109 (1979).

The judgment of the Court of Appeal is reversed, and these cases are remanded to that court for proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE WHITE joins, concurring in the judgment.

Under the California designation statute, each distiller is empowered to decide whether to regulate its product distribution within California by designating those importers that may sell its product. The statute contemplates a private market decision but provides a nonmarket mechanism for enforcing the decision. Hybrid restraints of this character require analysis that is different from a public regulatory scheme on the one hand, see, *e. g., Exxon Corp.* v. *Governor of Maryland*, 437 U. S. 117; *Joseph E. Seagram & Sons, Inc.* v. *Hostetter*, 384 U. S. 35,[1] and a purely private restraint on

---

[1] The Court states that *Seagram & Sons* is "much like" these cases. *Ante*, at 662. Except for the fact that *Seagram & Sons* also involved a facial challenge against a state statute, the two cases are quite different. The New York statute involved in *Seagram & Sons* imposed a degree of

the other, see, *e. g., Continental T. V., Inc.* v. *GTE Sylvania Inc.*, 433 U. S. 36; *Dr. Miles Medical Co.* v. *John D. Park & Sons Co.*, 220 U. S. 373. We have twice held that hybrid price-fixing restraints are prohibited by the Sherman Act. *Schwegmann Bros.* v. *Calvert Distillers Corp.*, 341 U. S. 384; *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U. S. 97. In both cases the private decision to fix prices was unsupervised by the State but made effective by state law.

The facts of *Schwegmann*, involving the Louisiana marketing practices of two out-of-state distributors of gin and whiskey, are particularly instructive. The distributors sought to control the retail prices of their products by obtaining from individual retailers a written agreement that they would comply with the minimum retail price schedules established by the distributors. These resale price maintenance agreements, which otherwise violated the Sherman Act, were rendered lawful by the Miller-Tydings Act and a Louisiana fair trade law. But a New Orleans retailer refused to sign such an agreement and sold the distributors' products at cutrate prices. The distributors responded by seeking to enjoin the retailer from selling the products at less than the minimum prices fixed by their schedules. The basis for their complaint was a Louisiana statute that condemned as unfair competition a sale at less than the price stipulated in a fair trade contract, even though the particular retailer was not a party to that contract. This Court held that the Sherman Act, as amended by the Miller-Tydings Act, precluded enforcement of the nonsigner provision.

Even though the private agreements to fix resale prices were not unlawful, *Schwegmann* held that the distributor could not place the same restraint on the market by using the

---

public regulation of the market; it did not grant liquor distributors a degree of private regulatory power. The restraint on the market was, therefore, not of the hybrid character that distinguishes these cases from most antitrust cases.

state statute as a *"club."* 341 U. S., at 395 (emphasis in original). The Court's holding teaches that a state statute that facilitates the manufacturer's decision to impose a vertical restriction is not lawful simply because the Sherman Act permits the manufacturer, if it has sufficient power in the private market, to impose that same restriction without the aid of the statute. In other words, a statute that gives distributors additional power over the wholesale or retail market to impose an otherwise permissible restraint might not pass muster under the Sherman Act.[2]

The inquiry in these cases therefore cannot simply be whether the Sherman Act would have been violated had the distillers obtained the control over their California distribution systems without the aid of the designation statute. For the distillers' power to impose resale restrictions on California importers has been drastically affected first by the Oklahoma "open wholesaling" and "free export" provisions and second by the California designation statute enacted as a response to the Oklahoma laws. It may be that the amount of distiller control over California importers under the two statutes is not significantly greater than the amount that would exist if neither State intervened in the private market. Contrary to the Court's perception, *ante*, at 662,[3] however, the character of control is different. For the designation statute

---

[2] Whereas *Schwegmann* best illustrates the different treatment accorded purely private restraints and hybrid restraints, perhaps *Midcal* best illustrates the different treatment accorded hybrid restraints and public regulation of the market. In *Midcal* a California statute required distributors of wine to file either fair trade contracts or price schedules with the State. All California retailers were required to sell wine at the price the distributors fixed. Relying upon *Schwegmann*, the Court invalidated the statute. Even though the State presumably could regulate the wine market by fixing retail prices itself, it could not empower private parties to undertake such regulation.

[3] "Thus, California's designation statute merely restored what Oklahoma had taken away: the distiller's ability to determine which wholesalers may import its products into California."

gives the distillers direct authority over California import-
ers,[4] whereas in the private market the distillers must
persuade Oklahoma wholesalers not to resell to California
importers. It is possible that, absent the state laws, the
distillers would have insufficient market power to obtain and
enforce such agreements. The designation statute therefore
may give the distillers more power over California importers
than was taken away by the Oklahoma laws.

The validity of the designation statute obviously presents a
more difficult question than was presented in *Schwegmann*
and *Midcal*.[5] For in both cases the Court had the benefit of
a conclusive presumption that resale price maintenance is
anticompetitive. This case, however, not only involves a
species of vertical nonprice restriction with respect to which
there are no sure rules relating to effect on competition; it
also involves a nonmarket enforcement mechanism that, ac-
cording to *Schwegmann*, can make the difference between
legality and illegality. The statute conceivably could create
such an unacceptable and unnecessary risk of anticompetitive
effect as to result in its invalidation. The removal of the
Oklahoma legal obstacle to the purely private imposition of
vertical restrictions in the California liquor market signifi-
cantly enhances this possibility.

---

[4] Unless an importer is expressly designated, it may not lawfully sell the
distiller's products within California.

[5] Under the Sherman Act, a manufacturer may choose the wholesalers
with whom it will do business. It may also place certain reasonable re-
strictions on each wholesaler as a condition of doing business. *Continen-
tal T. V., Inc.* v. *GTE Sylvania Inc.*, 433 U. S. 36. Subject to the excep-
tion recognized in *United States* v. *Colgate & Co.*, 250 U. S. 300, it may
not, however, dictate the price at which the wholesaler must sell the prod-
uct to retailers or to ultimate consumers. *Dr. Miles Medical Co.* v. *John
D. Park & Sons Co.*, 220 U. S. 373. From these different rules governing
the purely private decisions of manufacturers, it follows that a state stat-
ute that facilitates resale price maintenance and a state statute that facili-
tates other vertical restrictions are also subject to different antitrust
analyses.

I agree with the Court that our price-fixing cases do not require the invalidation of the designation statute. The question on remand should be whether the statute's provision to distillers of an additional club over California importers affords distillers an unreasonable degree of unsupervised power to regulate their distribution practices that they would not otherwise enjoy under a free market. Because that question cannot be determined without a more sophisticated inquiry, I concur in the Court's judgment.