899 F.2d 15
 1990-1 Trade Cases 68,996
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TRAFFIC JAM & SNUG, INC., Dylan Enterprises, Inc., and Ben
Edwards, Plaintiffs-Appellants,
v.
MICHIGAN LIQUOR CONTROL COMMISSION, and the State of
Michigan, Defendants-Appellees.
 No. 89-1825.
 United States Court of Appeals, Sixth Circuit.
 April 2, 1990.
 
 Before DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The plaintiffs-appellants, retailers of beer, were denied a brewery license by defendant Michigan Liquor Control Commission because the Michigan Liquor Control Act forbids a brewer from having an interest in a retailer. The plaintiffs sued the commission and the state, seeking a judgment declaring that Michigan's distribution system violates section one of the Sherman Act, 15 U.S.C. Sec. 1. The lower court dismissed the Sherman Act claim on the grounds that the commission's action was "pure state action" and was thus immunized from federal antitrust regulation. We agree, and we shall affirm the district court's judgment.
 
 
 2
 * Plaintiffs Traffic Jam & Snug, Inc., and Dylan Enterprises, Inc., are solely owned by plaintiff Ben Edwards. Traffic Jam operates a restaurant, a bakery, and a cheese dairy in Detroit, Michigan. These facilities are located on land owned by Dylan Enterprises.
 
 
 3
 Traffic Jam is licensed by the Michigan Liquor Control Commission for retail liquor sales. Mr. Edwards is constructing a small brewery on the Dylan property, and he has tried to obtain a license for the brewery from the commission. He wishes to produce beer for sale directly to Traffic Jam customers. "Brewpubs," as such brewery-taverns are known, have begun to appear in a number of states.
 
 
 4
 They have not heretofore existed in Michigan, at least in modern times. The Michigan Liquor Control Act, Mich.Comp.Laws Secs. 436.1 et seq., creates a three-tier system of beer distribution--brewers, distributors, and retailers--with sharp lines of demarcation. Section 436.30a requires brewers to give distributors exclusive territories for each brand of beer. Section 436.30b imposes numerous restrictions on the relationship between brewers and distributors. The section challenged here, Sec. 436.31, is a "tied-house" statute; it prohibits a brewer or distributor from having any financial or ownership interest in a retailer. On the basis of this section, the commission denied Traffic Jam's request for a brewer's license.
 
 
 5
 Having been denied a license, the plaintiffs (collectively, "Traffic Jam") filed a three-count complaint alleging that: (1) the state's system violated Sec. 1 of the Sherman Act, 15 U.S.C. Sec. 1; (2) the system denied the plaintiffs equal protection of the laws; and (3) the commission had engaged in an improper exercise in statutory construction.
 
 
 6
 The allegations in the Sherman Act count focus on the effects of the statute, the barrier to entry it presents, and the oligopolistic behavior it allows:
 
 
 7
 "16. This 3-tier system of beer distribution maintains the wholesale price of beer at an artifically high level.
 
 
 8
 17. The 3-tier system of beer distribution creates artificial barriers to entry of new brewers into the brewing industry, and as a direct and proximate result encourages consolidation of beer brewers and beer wholesalers with resulting negative impacts on trade, commerce, and competitiveness.
 
 
 9
 18. The 3-tier system of beer distribution has directly encouraged and caused oligopolistic beer brewing and beer wholesaling industries.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 26. The 3-tier system of beer distribution as defined at MCL 436.31 is not actively supervised by the STATE OF MICHIGAN, and aside from the bare licensing of those in the beer business, neither the STATE OF MICHIGAN nor the COMMISSION actively supervise the ongoing economic activities of its licensees, and in no way undertakes regulation or supervision of profit levels, capital expenditures, or other internal economic functions of the licensees."
 
 
 13
 The complaint does not attack price posting or division of territories, but merely the denial of a brewer's license to Traffic Jam:
 
 
 14
 "24. The brewery intended for TRAFFIC JAM & SNUG would enhance competition in the beer brewing industry, enhance competition in the beer wholesale industry, and enhance competition in the beer retail and restaurant industries.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 28. As brewers of beer, BEN EDWARDS and his corporations are being restrained from trade and commerce in direct violation of the Sherman Antitrust Act."
 
 
 18
 Finally, the Sherman Act count seeks relief from the restriction on licensing imposed by Sec. 436.31:
 
 
 19
 "WHEREFORE, PLAINTIFFS request that this Court enter a Judgment that MCL 436.31 is an illegal restraint of trade, a violation of the Sherman Antitrust Act, and that the MICHIGAN LIQUOR CONTROL COMMISSION and the STATE OF MICHIGAN be restrained from enforcing it."
 
 
 20
 The commission and the State of Michigan, moved to dismiss the Sherman Act claim under Rule 12(b)(6), Fed.R.Civ.P. The district court granted the motion. It held that the commission's denial of a brewer's license for Traffic Jam represented an exercise of control over the distribution of liquor, that the denial constituted "pure state action," and that it was therefore immune from antitrust challenge. Cf. Parker v. Brown, 317 U.S. 341 (1943). Traffic Jam voluntarily dismissed the equal protection and state statutory claims and now appeals the dismissal of its Sherman Act claim. The Michigan Beer and Wine Wholesalers Association has intervened as amicus curiae on behalf of the commission.
 
 II
 
 21
 In reviewing a dismissal on the pleadings, we must take the facts alleged in the complaint as true. Duncan v. Leeds, 742 F.2d 989, 990 (6th Cir.1984). The district court's decision on whether the complaint states a claim is reviewed de novo.
 
 
 22
 A three-step analysis is employed in determining whether a state's liquor regulation is valid. See 324 Liquor Corp. v. Duffy, 479 U.S. 335 (1987). First, the court must determine whether the state's regulatory system is inconsistent with the antitrust laws. Id. at 341. Second, the court must determine whether the challenged conduct is immune from antitrust regulations as state action. Id. at 343. If not, the court must move to the third step: whether the state's regulation falls within the power reserved to the states by the Twenty-First Amendment. Id. at 346.
 
 
 23
 The district court did not decide the first question posed under the 324 Liquor test because it concluded that the commission had not argued that Sec. 436.31 was consistent with Sec. 1 of the Sherman Act. It appears to us, however, that the commission did argue that there was no concerted action sufficient to invoke the Sherman Act. See Fisher v. City of Berkeley, 475 U.S. 260, 266 (1986). Before this court, the commission continues to urge that "even absent the Parker and Midcal considerations, the state action before this Court represents no viable cause of action under traditional Sherman antitrust scrutiny."
 
 
 24
 The Michigan statute may only be condemned if the conduct it contemplates would constitute a per se violation of the Sherman Act. Rice v. Norman Williams Co., 458 U.S. 654, 661 (1982). See also Fisher, 475 U.S. at 270 (because the conduct is not a per se violation, the Court need not consider whether it is immune as state action). It is highly doubtful that the three-tier arrangement is a per se violation of the Sherman Act. All vertical restraints have the potential to increase prices, but "a vertical restraint is not illegal per se unless it includes some agreement on price or price levels." Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 728, 735-36 (1988). Mich.Comp.Laws Sec. 436.31 itself requires no agreements on prices or price levels.
 
 
 25
 Be that as it may, we conclude, as did the district court, that the state action doctrine is controlling here. The Sherman Act is "not intended to restrain state action or official action directed by a state." Parker v. Brown, 317 U.S. 341, 351 (1943). Where the conduct is not that of the sovereign itself, the conduct must be based upon a "clearly articulated" state policy and must also be "actively supervised" by the state. See California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 105 (1980). The Supreme Court recently made clear that the two-part test does not apply to actions of the state legislature:
 
 
 26
 When the conduct is that of the sovereign itself, on the other hand, the danger of unauthorized restraint of trade does not arise. Where the conduct at issue is in fact that of the state legislature or Supreme Court, we need not address the issue of "clear articulation" and "active supervision."
 
 
 27
 Hoover v. Ronwin, 466 U.S. 558, 569 (1984). Although it was the commission, rather than the legislature, that formally denied Traffic Jam's application for a brewer's license, Traffic Jam has conceded, at least for purposes of this claim, that Sec. 436.31 left the commission no choice. Further, the Supreme Court has suggested that where the actor is a state agency, "it is likely that active state supervision would also not be required, although we do not here decide that issue." Town of Hallie v. City of Eau Claire, 471 U.S. 34, 46 n. 10 (1985). This alone is likely sufficient to immunize Sec. 436.31.
 
 
 28
 The Commission's denial of the brewer's license passes the two-pronged Midcal test in any event. Traffic Jam has conceded that Michigan's policy prohibiting tied houses is clearly articulated. As to the second prong of the test, it is evident that the Commission actively conducts the licensing itself.
 
 
 29
 In Midcal, a wine wholesaler challenged California's resale price maintenance and price posting statutes. The statutes forbade any wholesaler from selling wine for less than the price set by the wine producer in a "fair trade contract" filed with the state. The state did not review the reasonableness of the set prices. The plaintiff wholesaler was found to have sold wine for less than the price set by the producer. Midcal, 445 U.S. at 99-100. The Court struck down the system, reasoning that " 'a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful....' " Id. at 104, quoting Parker, 317 U.S. at 351. In the case at bar, by contrast, neither the state nor its liquor commission has authorized anyone to violate the Sherman Act. According to the complaint, at least, the state merely precludes beer retailers from brewing beer. Michigan beer wholesalers and brewers play no role in this separation of functions. It is the state that controls entry into the brewing market, just as it might control entry into the intrastate trucking market or the legal market. The commission's exercise of such control is state action immune from Sherman Act regulation.
 
 
 30
 The judgment of the district court is AFFIRMED.