INTERCONTINENTAL PACKAGING PANY, a Minnesota corporation, Respondent,

v.

Joseph NOVAK, Director of the Liquor Control Division of the Minnesota Department of Public Safety, et al, Appellants.

Nos. CX–82–110, C9–82–986.

Supreme Court of Minnesota.

May 4, 1984.

Hubert H. Humphrey, III, Atty. Gen., Richard S. Slowes, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Felix M. Phillips, and Bert M. Gross, Minneapolis, for respondent.

## OPINION

COYNE, Justice.

The respondents—Intercontinental Packaging Co. and its parent, Johnson Brothers

Wholesale Liquor Co. (referred to collectively as "Intercontinental")—secured from the Ramsey County District Court a permanent injunction against the enforcement of the Minnesota wholesale liquor price posting system, Minn.Stat. § 340.983 (1982) and 11 MCAR § 1.8038E. The injunction has been stayed pending this appeal. We conclude that the district court was mistaken in its application of antitrust and exemption principles, and we reverse.

Minn.Stat. § 340.983 (1982) requires each wholesaler of distilled liquor or wine to file monthly with the commissioner of public safety a schedule of the prices, including volume prices, it intends to charge retailers during that month.[1] Any schedule may be amended within five days after its filing. The amended price may not be lower than the lowest new price filed on the first day of that month for the same or similar product by any wholesaler.[2] The price cannot be lower than cost without the commissioner's permission. 11 MCAR § 1.8038E(9). Quantity discounts cannot exceed 25 cases. Minn.Stat. § 340.983, 11 MCAR § 1.8038E(11). The commissioner is charged with making the filed price schedules easily accessible to the public.

The price posting requirement applies also to any brand owner who acts as a wholesaler by selling directly to retailers. Typically, the brand owner is the manufacturer of a brand of liquor or wine sold under an owned label. Brand owners and others who import intoxicating liquor into Minnesota must file an itemized price list monthly with an affirmation that the prices filed are the lowest prices at which the importer is contemporaneously selling such liquor in any other state or the District of Columbia. Minn.Stat. § 340.114, subd. 3 (1982); 11 MCAR § 1.8039C.

An importer must sell at his affirmed price to all Minnesota wholesalers and manufacturers on an equal basis. Minn.Stat. § 340.114, subd. 1 (1982). Similarly, manufacturers and wholesalers are required to sell at their own posted prices, and discrimination in the sale of their products to retailers is prohibited. 11 MCAR § 1.8038G.

The price posting system is enforced by the liquor control division of the department of public safety. Division personnel review the filings each month to ensure that price schedules are filed in an approved format and that the price schedules and amendments, including all allowances, quantity discounts, and credit terms, are understandable and enforceable. Enforcement is usually initiated by complaint. Filing irregularities are customarily handled by a telephone request for compliance with the regulations. The enforcement division

---

**1.** The full text of Minn.Stat. § 340.983 (1982) follows:

> No brand owner or wholesaler of distilled liquor or wine shall sell, offer for sale, or solicit any order for distilled liquor or wine unless a schedule of wholesale prices, which shall include varying volume prices, is filed with the commissioner, on a form prescribed by him, and no sales shall be made except in accordance with such prices. Such forms shall provide for the listing of the price, including any varying volume prices, at which each brand distributed by the filing wholesaler or brand owner is sold. The commissioner shall maintain such filings in such a manner as to make their contents easily accessible to the public. The filings required under this section shall be made not later than the first day of each month, and the schedule of filed prices shall be effective from that day until the first day of the next month, provided that any filing may be amended within five days after its filing. The commissioner shall pro-
>
> vide copies of such filings to any person requesting them, and may charge a reasonable fee therefor. Any person may examine such filings in the office of the commissioner, and no charge shall be made for such examination.
>
> No volume price filed pursuant to this section shall be for a quantity in excess of 300 quarts.

The department of public safety has promulgated regulations implementing the system set out in § 340.983. 11 MCAR § 1.8038E.

**2.** Section 340.983 itself provides only that "amended" filings may be made within five days. The "meet but not beat" feature of the system originated in a regulation, 11 MCAR § 1.8038E(4). On appeal, Intercontinental claims that the regulation is beyond the scope of the department's statutory authority and is, therefore, invalid. This issue, however, was not raised before the district court and may not be raised for the first time on appeal.

investigates complaints of other kinds of violations, such as sales at variance with the seller's posted price or the filing of prices for goods not stocked. Violations of the Liquor Control Act are punishable by license suspension or revocation.[3]

The price posting system is one facet of the major revision in 1973 of Minnesota's liquor laws. 1973 Minn.Laws chs. 664, 444. Formerly, Minnesota had permitted distillers and manufacturers to utilize an exclusive-brand distribution system and had required wholesalers or brand owners to file a schedule of minimum *resale* prices binding on retailers. The 1973 act eliminated exclusive distributorships, required nondiscriminatory sales, and prohibited minimum resale price contracts or even lists of suggested resale prices. The constitutionality of that portion of the 1973 act requiring distillers to offer their products for sale to all Minnesota liquor wholesalers on an equal basis was challenged before its effective date. Observing that the ultimate legislative objective of c. 664 was to encourage wholesalers by competition to lower prices to retailers, we declared the act to be a valid exercise of the state's police power to promote the public's economic welfare and upheld the constitutionality of c. 664 on its face. *Federal Distillers, Inc. v. State,* 304 Minn. 28, 229 N.W.2d 144, *appeal dismissed sub. nom. Griggs, Cooper & Co. v. Novak,* 423 U.S. 908, 96 S.Ct. 209, 46 L.Ed.2d 137 (1975).

In this action Intercontinental contends that on the fifth day of each month Intercontinental and the other wholesalers generally amend their prices on major items to meet the lowest price filed on the first of the month, and Intercontinental complains of its inability to alter its prices until the first of the next month. Intercontinental alleges that the price posting system is inconsistent with and, hence, is preempted by the Sherman Antitrust Act. 15 U.S.C. §§ 1–31. The trial court found that enforcement of the statutory system tends to

fix prices at an artificially high level and to inhibit competition by limiting quantity discounts for large or special purchases, precluding wholesalers from charging different prices in different areas within the state, and prohibiting changing prices before the first day of the following month, and concluded that the price posting system set out at Minn.Stat. § 340.983 (1982), together with the rules promulgated by the liquor control division, constitutes resale price maintenance and price fixing, restrains trade, and is violative *per se* of § 1 of the Sherman Act.

Section 1 of the Sherman Act provides, in relevant part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal...." The trial court ruled that the price posting system, Minn.Stat. § 340.983 (1982), was preempted pursuant to the Supremacy Clause of the United States Constitution because it created a restraint of trade, the restraint of "price-fixing." We examine this conclusion in terms of two separate, but related, issues: (1) under preemption analysis does the price posting system mandate behavior which violates the Sherman Act; and (2) if so, does state action immunity under *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), prevent federal preemption of the Minnesota statute?

I.

■ We hold that Minn.Stat. § 340.983 (and the regulations promulgated thereunder) does not mandate conduct violative of the Sherman Act. The state wholesale price posting system, which is very similar to the import price filing and affirmation system approved in *Joseph E. Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966), and *Federal Distillers, Inc. v. State,* 304 Minn. 28, 229 N.W.2d 144, *appeal dismissed sub.*

---

**3.** Shortly before the commencement of this action, the commissioner initiated administrative proceedings for the imposition of Johnson Brothers of statutory sanctions for noncompliance.

*nom. Griggs, Cooper & Co. v. Novak,* 423 U.S. 908, 96 S.Ct. 209, 46 L.Ed.2d 137 (1975), does not on its face irreconcilably conflict with the Sherman Act. Hence, the Sherman Act does not preempt the state regulatory system. The rule regarding preemption of a state statute by the Sherman Act has been expressed in these words: ˎ

> Our decisions in this area instruct us, therefore, that a state statute, when considered in the abstract, may be condemned under the antitrust laws only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute.

*Rice v. Norman Williams Co.,* 458 U.S. 654, 661, 102 S.Ct. 3294, 3300, 73 L.Ed.2d 1042 (1982).

■ The trial court based its determination that § 340.983 and related regulations were illegal *per se* and, hence, invalid on *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). The Minnesota Liquor Control Act, however, does not mandate vertical price restraint by requiring producers and wholesalers to set resale prices by contract or filing, as did the California statute at issue in *Midcal.* On the contrary, the Minnesota Liquor Control Act prohibits not only contractual restraint of any resale price but even the communication in any manner of a suggested retail price. Minn.Stat. §§ 340.-114, subd. 2(e) and 340.15, subd. 2 (1982). The trial court's conclusion that § 340.983 constitutes resale price maintenance is clearly erroneous. ·,

■ The trial court also concluded that § 340.983 "constitutes price fixing." Whether that conclusion reflects a determination that the statute, on its face, compels horizontal price fixing or that the inevitable effect of the statute is to fix uniform prices is unclear. On the basis of testimony that wholesalers generally file high prices on the first day of the month and meet the

lowest price on the fifth day, the court found that (1) the wholesalers tend to set the same prices for the best selling brands of liquor and (2) the system tends to maintain prices at an artificially high level. Agreements among members of an industry to fix prices are unlawful *per se* under the Sherman Act. *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). The price posting system, however, involves merely the exchange of pricing information which the district court found to result in uniform prices. A private agreement among controlling suppliers of a product to exchange price information, although not unlawful *per se,* has been held to violate the Sherman Act when the effect is to fix prices by joint arrangement. *United States v. Container Corp. of America,* 393 U.S. 333, 89 S.Ct. 510, 21 L.Ed.2d 526 (1969); *United States v. United States Gypsum Co.,* 438 U.S. 422, 441, 98 S.Ct. 2864, 2875, 57 L.Ed.2d 854 (1978). Consciously parallel business behavior may be circumstantial evidence from which a finder of fact may infer agreement. *E.g., Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.,* 346 U.S. 537, 74 S.Ct. 257, 98 L.Ed. 273 (1954).

■ *Socony-Vacuum and Container Corp.,* however, involved that element necessary to the horizontal price fixing proscribed under § 1 of the Sherman Act: an agreement in restraint of trade. Minn. Stat. § 340.983 does not, on its face, compel any sort of agreement among wholesalers. Nor is Minnesota's price posting system the equivalent of an agreement. Unlike the statute condemned in *California Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), which mandated the fixing of resale prices either by contract or by filed schedule binding on all wholesalers, the price posted pursuant to the Minnesota Liquor Control Act binds no one but the wholesaler who files it. *Wine and Spirits Specialty, Inc. v. Daniel,* 666 S.W.2d 416 1984–1 Trade Cases (CCH) ¶ 65,916 (Mo.1984); *United States Brewers*

*Association, Inc. v. Healy,* 532 F.Supp. 1312, 1329 (D.Conn.), *rev'd on other grounds,* 692 F.2d 275 (2d Cir.1982).

■ Furthermore, there is no finding of an agreement or conspiracy among wholesalers to justify the conclusion that the effect of the price posting system is horizontal price fixing. Indeed, the witnesses disclaimed any knowledge of an agreement, either express or tacit, to fix uniform prices. Section 340.983 only requires unilateral action. Each wholesaler is free to set its own price. The statute provides an opportunity for amendment of the posted price, but amendment is not required. Whether or not to amend is a decision based on the wholesaler's independent judgment. That amended filings tend to match the lowest posted price suggests ordinary competitive conduct rather than anticompetitive conduct. It has never been held that proof of consciously parallel business behavior conclusively establishes agreement or that such behavior itself constitutes a Sherman Act offense. *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.,* 346 U.S. 537, 541, 74 S.Ct. 257, 259, 98 L.Ed. 273 (1954). And in any event anticompetitive effect alone is insufficient to establish a violation. *Rice v. Norman Williams Co.,* 458 U.S. 654, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982); *New Motor Vehicle Board of California v. Orrin W. Fox Co.,* 439 U.S. 96, 110–11, 99 S.Ct. 403, 412–13, 58 L.Ed.2d 361 (1978).

■ Neither did the trial court find that § 340.983 subjects wholesalers to "irresistible pressure" to fix prices. *Joseph E. Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35, 45, 86 S.Ct. 1254, 1261, 16 L.Ed.2d 336 (1966). There is, in fact, evidence that one wholesaler, which often files the lowest price for various brands of liquor, has increased its share of the market since the price posting system has been in effect.

Certainly, the Liquor Control Act restricts in some measure the wholesalers' flexibility with respect to prices. Nevertheless, nothing in the price posting system prevents prices from settling to their lowest competitive level. If wholesalers have utilized the price posting system to facilitate a private agreement to restrain trade by fixing prices, the conspirators may not invoke the statute to insulate their conduct from scrutiny under the Sherman Act. On the other hand, such illegal conduct affords no basis for condemning the statute itself. Enforcement of a state statute may be enjoined only if the statute on its face irreconcilably conflicts with federal antitrust policy. Since Minn.Stat. § 340.983 (1982) does not mandate conduct violative of the Sherman Act, the Sherman Act does not preempt the state regulatory system.

## II.

■ Even if Minn.Stat. § 340.983 (1982) conflicted with the Sherman Act, the statute would be saved from invalidation under the doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943): the Sherman Act was not intended to prohibit state action.[4] We hold that the Parker doctrine, as refined in subsequent opinions of the United States Supreme Court, immunizes the price posting system from Sherman Act scrutiny.

Parker was an action to restrain the enforcement of California's proration marketing program for raisins. The main feature of the program, formulated by a statutory commission of private producers, provided that 50% of each producer's crop be put into a pool and sold by the commission at or above market prices in order to "obtain stability in the market." Approval of 65% of the producers was required to put the program into effect. Brown, a producer

---

4. Of course, this examination of legislative intent is closely akin to preemption analysis. If the Sherman Act has not "preempted the field" of state economic regulation, then a specific state law which promotes some anticompetitive behavior is not preempted by the general mandate of the Sherman Act. *See Community Communications, Inc. v. City of Boulder,* 455 U.S. 40, 60, 102 S.Ct. 835, 845, 70 L.Ed.2d 810 (1982) (Rehnquist, J. dissenting). The fact that this case involves intrastate liquor regulation, which is an area traditionally reserved to the states, U.S. Const.Am. XXI, reinforces this view.

who had contracted for the sale of his crop prior to approval of the program, claimed preemption of the state statute by federal law, including the Sherman Act. The Supreme Court upheld the validity of the California statute, and its discussion of antitrust immunity remains an important part of antitrust doctrine:

We may assume for present purposes that the California prorate program would violate the Sherman Act if it were organized and made effective solely by virtue of a contract, combination or conspiracy of private persons, individual or corporate.

\* \* \* \* \* \*

*But it is plain that the prorate program here was never intended to operate by force of individual agreement or combination. It derived its authority and its efficacy from the legislative command of the state and was not intended to operate or become effective without that command. We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature.* In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.

\* \* \* \* \* \*

There is no suggestion of a purpose to restrain state action in the Act's legislative history. The sponsor of the bill which was ultimately enacted as the Sherman Act declared that it prevented only "business combinations".

\* \* \* \* \* \*

True, a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful, [citation omitted]; and we have no question of the state or its municipality becoming a participant in a private agreement or combination by others for restraint of trade, [citation omitted]. Here the state command to the Commission and to the program committee of the California Prorate Act is not rendered unlawful by the Sherman Act since, in view of the latter's words and history, it must be taken to be a prohibition of individual and not state action.

*Parker,* 317 U.S. at 350–52, 63 S.Ct. at 313–14 (emphasis added).

The foregoing language from *Parker* is equally applicable here. Intercontinental claims that the price posting system fixes prices; and there is little doubt that if this system had been created by the private action of a business combination, the agreement would be illegal under the Sherman Act. The price posting system is, however, entirely the result of state action and was imposed as a governmental act of economic regulation with respect to the distribution of liquor, the control of which has traditionally been reserved to the states.

■ Of course, a more precise immunity standard has evolved since *Parker,* and it is this standard against which the price posting system must be measured. Antitrust immunity is applicable only if (1) the challenged restraint is "clearly articulated and affirmatively expressed as state policy" and (2) the policy is "actively supervised" by the state itself. *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980).

The price posting system created by Minn.Stat. § 340.983 (1982) satisfies the first requirement. The legislative policy of this state, to displace unfettered business freedom in the distribution of liquor, is clearly articulated and affirmatively expressed.

The second requirement, derived from the principle that a state cannot immunize private anticompetitive behavior from the Sherman Act merely by approving or authorizing that conduct, *Parker,* 317 U.S. at 351–53, 63 S.Ct. at 313–14, is also satisfied.

Minnesota actively supervises the price posting system.

In recent years the United States Supreme Court has clarified this second requirement, which is simple to articulate but difficult to apply, in upholding state regulations even though they facilitated private anti-competitive behavior. In *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), an anticompetitive disciplinary rule of the state bar association—a prohibition on attorney advertising—was held immune from antitrust scrutiny under *Parker*. The rule was subject to "pointed re-examination" by the state supreme court, which was the state's policymaker. An additional factor was that the rule had been promulgated in performance of the state's traditional regulation of a learned profession. *Id.* at 362, 97 S.Ct. at 2698.

In *New Motor Vehicle Board of California v. Orrin W. Fox Co.*, 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978), antitrust immunity was accorded a state statute which provided a hearing if an automobile franchisee protested the establishment of a competing franchise. Since a hearing rarely resulted in a successful challenge of the new franchise, it was contended that the hearing merely facilitated anticompetitive delay tactics. The duration of the delay, however, was subject to ongoing regulatory supervision. Hence, the state was not simply approving private anticompetitive behavior.

On the other hand, the California wine pricing system mandating resale price maintenance, a *per se* violation of the Sherman Act, *Schwegmann Brothers v. Calvert Distillers Corp.*, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951), did not meet the second requirement for *Parker* immunity. *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). The state neither set the prices nor reviewed their reasonableness nor regulated the terms of the fair trade contracts by which prices were set. The state did not monitor market conditions or engage in any "pointed re-examination" of the program. The statute simply mandated what was essentially a private price-fixing arrangement.

The trial court considered the Minnesota Liquor Control Act indistinguishable from the California statute condemned in *Midcal* and ruled that the Minnesota price posting system was not protected state action because the state did not review the reasonableness of the prices filed by private parties. The statutes differ, however, both in purpose and in the extent and nature of state involvement. As we observed in *Federal Distillers, Inc. v. State*, 304 Minn. 28, 229 N.W.2d 144, *appeal dismissed sub nom. Griggs, Cooper & Co. v. Novak*, 423 U.S. 908, 96 S.Ct. 209, 46 L.Ed.2d 137 (1975), the 1973 act eliminated exclusive distributorships, prohibited minimum resale price contracts, and required that all sales be on an equal, nondiscriminatory basis. We also noted that the ultimate legislative purpose was to encourage wholesalers, by making all distillers' brands available to them, to engage in competition which would lower prices to retailers. The effect of the act on Minnesota's licensed components of the liquor industry is not only to prohibit discrimination by distillers but also to prohibit discrimination by wholesalers in favor of one retailer against another and to promote a wider distribution of liquor brands throughout the state by affording retailers the opportunity to purchase a variety of brands from competing wholesalers. *Id.* 304 Minn. at 38, 229 N.W.2d at 153.

Since the price posting system mandates unilateral action—each wholesaler declares only its own price—review of the reasonableness of those prices is both unnecessary and unsuitable. The state's involvement is appropriately directed toward the achievement of the statute's purposes. For the guidance of brand owners and wholesalers, the department of public safety has established a complete format for understandable and enforceable price schedules. For example, under the extensive regulations promulgated by the de-

partment, wholesalers may not sell liquor below cost except in an amended schedule filed to meet a competitor's price, 11 MCAR § 1.8038E(9–10), and no price schedule may list brands which are not in stock or on accepted order.. 11 MCAR § 1.8038E(7). The liquor control division monitors the filings and takes prompt action to ensure that the schedules meet the division's standards. The division makes the schedules readily accessible to all wholesalers and retailers and to any interested member of the public. The statutory restrictions which Intercontinental seems to consider most onerous—the 300 quart or 25 case limitation on quantity discounts and the requirement that posted prices remain in effect until the first of the following month—are vital to the enforcement of the statutory admonition that all sales are to be made on an equal nondiscriminatory basis. Not only does the division enforce the system but its director regularly reports to the legislature, summarizing the division's activities and the effects of the price posting system, permitting the legislature—the policymaker—to engage in "pointed re-examination" of the system.

Minnesota has adopted a statutory price posting system clearly articulating the state policy of economic regulation of the liquor industry and has demonstrated its commitment to that policy through its exercise of supervisory oversight. The statute neither authorizes private anticompetitive action nor declares private anticompetitive action to be lawful. To the extent that the restrictions on quantity discounts and price changes have an anticompetitive effect, that effect is a necessary result of the statutory policy of nondiscriminatory sales. We conclude that since the state has substituted its own supervision for the economic constraints of the competitive marketplace, the Sherman Act does not preempt the Minnesota wholesale liquor price posting system.

Reversed.