408 F.3d 112
 FREEDOM HOLDINGS, INC., d/b/a North American Trading Co. and International Tobacco Partners, Ltd., on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,
v.
Eliot SPITZER, in his official capacity as Attorney General of the State of New York and Arthur J. Roth, in his official capacity as Commissioner of Taxation and Finance of the State of New York, Defendants-Appellees.
Docket No. 04-4996-CV.
 United States Court of Appeals, Second Circuit.
 Argued: February 1, 2005.
 Decided: May 18, 2005.
 
 David F. Dobbins, Patterson Belknap Webb & Tyler, LLP, New York, N.Y. (Blair Axel and Walter M. Luers, on the brief), for Plaintiffs-Appellants.
 Avi Schick, Deputy Counsel to the Attorney General, Office of the Attorney General, State of New York, New York, N.Y. (Eliot Spitzer, Attorney General, David Nocenti, Counsel to the Attorney General, and Lewis Polishook, Assistant Attorney General, on the brief), for Defendants-Appellees.
 Leonard Violi, Law Offices of Leonard Violi, LLC, Mamaroneck, NY, for amici curiae Grand River Enterprises Six Nations, Ltd., Nationwide Tobacco, Inc., and 3B Holdings, Inc., on behalf of Plaintiffs-Appellants.
 Nicholas W. Allard, Patton Boggs LLP, Washington, DC (Heather M. McPhee and Jonathan C. Su, Latham & Watkins LLP, Washington, DC; Mark Sibley Ryan, Daughters & Ryan, Inc., Smithfield, NC; John R. Long, Liggett Group Inc., Mebane, NC; Stanley D. Friedman, McAloon & Friedman, PC, New York, NY; Neal N. Beaton, Holland & Knight LLP, New York, NY; Barry Garner, Liberty Brands, LLC, Richmond, VA; Marc N. Bell, Vector Tobacco Inc., Miami, FL; Jennifer B. Healey, Bryan Cave LLP, Phoenix, AZ; and Bhavani Parameswar, King Maker Marketing, Inc., Paramus, NJ) for amici curiae Top Tobacco, LP, Daughters & Ryan, Inc., Liggett Group Inc., Sherman 1400 Broadway N.Y.C., Inc., Japan Tobacco Intl. U.S.A., Inc., Liberty Brands, LLC, Vector Tobacco Inc., Lignum-2, Inc., and King Maker Marketing, Inc., on behalf of Defendants-Appellees.
 Richard A. Samp, Washington Legal Foundation (Daniel J. Popeo), for amicus curiae Washington Legal Foundation, on behalf of Defendants-Appellees.
 Before: JACOBS and CALABRESI, Circuit Judges, and RAKOFF, District Judge.*
 JACOBS, Circuit Judge.
 
 
 1
 Plaintiffs Freedom Holdings, Inc. and International Tobacco Partners, Ltd., cigarette importers, appeal from the denial of a preliminary injunction by the United States District Court for the Southern District of New York (Hellerstein, J.), against enforcement of New York legislation that imposes burdens on firms that have not joined the Master Settlement Agreement ("MSA"). Freedom Holdings, Inc. v. Spitzer, No. 02 Civ. 2939(AKH), 2004 WL 2035334 (S.D.N.Y. Sept.14, 2004). We affirm.
 
 BACKGROUND
 
 2
 In 1998, to settle numerous state lawsuits filed against the major cigarette manufacturers, the states and manufacturers executed the MSA, which immunized participating tobacco manufacturers from suit by the settling states in exchange for annual payments to each state (based on sales volume and market share) and compliance with restrictions on (inter alia) sales and advertising. After the MSA was executed, each settling state passed legislation requiring annual payments from manufacturers who did not join the MSA (non-participating manufacturers or "NPMs"), in the form of deposits into escrow accounts from which funds can be drawn to settle any lawsuit the state might elect to pursue. The statutes at issue on this appeal are New York's "Escrow Statute," N.Y. Pub. Health Law § 1399-nn to -pp, and "Contraband Statutes," N.Y. Tax Law §§ 480-b, 481 subdiv. 1(c), 1846. This Court's prior opinions in this case describe the MSA and these statutes in greater detail, and we assume familiarity with those opinions. See Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205 (2d Cir.2004) ("Freedom I"); Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149 (2d Cir.2004) ("Freedom II").
 
 
 3
 Plaintiffs, who have not joined the MSA, brought suit claiming that the Escrow and Contraband Statutes violate the Constitution and were preempted by Section 1 of the Sherman Act, 15 U.S.C. § 1. At the 12(b)(6) stage, this Court affirmed in part and vacated in part the dismissal of Plaintiffs' constitutional claims, and allowed their preemption claim to proceed. See Freedom I, 357 F.3d at 209 (denying in part Defendants' 12(b)(6) motion); Freedom II, 363 F.3d at 158 (denying Defendants' petition for rehearing).
 
 
 4
 Plaintiffs sought a preliminary injunction of the Escrow and Contraband Statutes, which the district court denied.[1]
 
 DISCUSSION
 
 5
 Where (as here) the plaintiff seeks a preliminary injunction of "government action taken in the public interest pursuant to a statutory or regulatory scheme," it must show (at the least) (i) irreparable harm absent the injunction and (ii) a likelihood of success on the merits. Rodriguez v. DeBuono, 175 F.3d 227, 233 (2d Cir.1999) (quotation omitted). We review the district court's denial of a preliminary injunction for an abuse of discretion, but we "may affirm on any ground supported by the record." NXIVM Corp. v. Ross Inst., 364 F.3d 471, 476 (2d Cir.2004).
 
 
 6
 To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer "an injury that is neither remote nor speculative, but actual and imminent," and one that cannot be remedied "if a court waits until the end of trial to resolve the harm." Rodriguez, 175 F.3d at 234-35 (quotation omitted). "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.... Accordingly, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." Id. at 233-34 (quotation omitted).
 
 
 7
 The district court found no irreparable harm, primarily because NPMs as a class have been gaining market share over the life of the MSA and related statutes. However, the irreparable harm claimed by Plaintiffs is the incremental market share growth that they would achieve if they were not forced by the Escrow and Contraband Statutes to sell their cigarettes at higher prices. An anticipated loss of market share growth may suffice as an irreparable harm. See, e.g., Register.com Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir.2004) (no abuse of discretion in finding injunction necessary to prevent loss of business opportunities due to defendant's conduct); Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 596 (3d Cir.2002) (loss of market share due to defendant's conduct constitutes irreparable harm); see also Jacobson & Co. v. Armstrong Cork Co., 548 F.2d 438, 444-45 (2d Cir.1977) (discussing hardship of threatened loss of potential customers due to defendant's conduct, which could not "be rectified by monetary damages").
 
 
 8
 At oral argument, Plaintiffs also asserted that they would go out of business if they were required to make the deposits required by the Escrow Statute. However, the record does not support the contention that compliance with the Escrow and Contraband Statutes pending trial would force Plaintiffs out of business, or would fundamentally change the nature of their operations.
 
 
 9
 The allegation that market share would be "lost" fails, on the current record, to satisfy the irreparable harm requirement. At the preliminary injunction stage, the only cognizable harms are those that cannot be remedied at the end of trial if the movant were to prevail. See, e.g., Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 82 (2d Cir.1994) (no irreparable injury where plaintiff "could be adequately compensated with money damages if it were to prevail on these claims at trial"). Plaintiffs concede, however, that if they prevail at trial they will be entitled to a return of any funds deposited into escrow. Therefore, Plaintiffs could sell at the desired competitive price, either by bearing the costs of compliance themselves, or by securing a loan, and would be recompensed after trial.
 
 
 10
 Of course, Plaintiffs may (and likely will) suffer some harm for which they will not receive compensation. For example, the interest earned on any escrowed funds may not adequately compensate Plaintiffs for the time-value of their money, and if a loan is procured, the escrowed funds plus interest may be insufficient to cover the debt service on any such loan. However, ordinary compliance costs are typically insufficient to constitute irreparable harm. See Am. Hosp. Ass'n v. Harris, 625 F.2d 1328, 1331 (7th Cir.1980) ("[I]njury resulting from attempted compliance with government regulation ordinarily is not irreparable harm."); A.O. Smith Corp. v. FTC, 530 F.2d 515, 527-28 (3d Cir.1976) ("Any time a corporation complies with a government regulation that requires corporation action, it spends money and loses profits; yet it could hardly be contended that proof of such an injury, alone, would satisfy the requisite for a preliminary injunction."). Therefore, Plaintiffs' general failure to demonstrate the adverse impact of interim compliance—at least on the record before us—is dispositive.
 
 CONCLUSION
 
 11
 At this stage of the proceedings, Plaintiffs have failed to satisfy the irreparable harm requirement; therefore, the district court's denial of a preliminary injunction is affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The district court did enjoin enforcement of a recent amendment to the Escrow Statute (the "allocable share repealer") that reduces the amount of deposited funds an NPM can reclaim at the end of any given yearSee Freedom Holdings, 2004 WL 2035334, at *5, *30-*31; N.Y. Pub. Health Law § 1399-pp subdiv. 2(b)(ii) as amended by 2003 N.Y. Laws 666 (effective Oct. 15, 2003). The State does not challenge that ruling here.