**GRAND RIVER ENTERPRISE SIX NATIONS, LTD., Plaintiff–Appellant,**

Jash International, Inc., International Tobacco Partners, Ltd., Nationwide Tobacco, Inc., Sun Tobacco, Inc., 3B Holdings, Inc., and Attorney General Richard P. Leyoub, Plaintiffs,

v.

William PRYOR, Bruce M. Botelho, Janet Napolitano, Bill Lockyer, Ken Salazar, M. Jane Brady, Thurbert E. Baker, Allan G. Lance, Jim Ryan, Steve Carter, Thomas J. Miller, Carla J. Stovall, Albert Benjamin Chandler III, Richard P. Ieyoub, G. Steven Rowe, J. Joseph Curran, Jr., Thomas F. Reilly, Jennifer Granholm, Jeremiah W. Nixon, Michael McGrath, Don Stenberg, Eliot Spitzer, Roy Cooper, Betty D. Montgomery, Hardy Myers, Charles Condon, Mark Barnett, Paul G. Summers, Christine O. Gregorie, James E. Doyle and Hoke Macmillian, each in their official capacity as Attorneys General of the States of Alabama, Alaska, Arizona, California, Colorado, Delaware, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Missouri, Montana, Nebraska, New York, North Carolina, Ohio, Oregon, South Carolina, South Dakota, Tennessee, Washington, Wisconsin, and Wyoming, respectively, Defendants–Appellees.

Docket No. 06–2747–cv.

United States Court of Appeals, Second Circuit.

Argued: Feb. 12, 2007.

Decided: March 6, 2007.

**62**

Leonard Violi, Law Offices of Leonard Violi, LLC, Mamaroneck, NY, for Plaintiff–Appellant.

Benjamin N. Gutman (Avi Schick, Deputy Attorney General, and Dana Biberman, Assistant Attorney General, of counsel), for Eliot Spitzer, Attorney General of the State of New York, New York, NY, for Defendants–Appellees.

Before CALABRESI, B.D. PARKER, and WESLEY, Circuit Judges.

PER CURIAM.

Although this case comes to us against the backdrop of a $206 billion multi-state settlement of tobacco-related litigation, a protracted procedural history,[1] and an important set of federal antitrust and dormant Commerce Clause challenges to the settlement and related state legislation, the precise question with which we are currently presented is a narrow one. We must determine whether, on the evidence before it, the district court abused its discretion in denying Plaintiff–Appellant Grand River Enterprise Six Nations, Ltd. ("Grand River") the "extraordinary and drastic remedy" of a preliminary injunction. *Moore v. Consol. Edison Co.*, 409

---

**1.** See *Grand River Enters. Six Nations, Ltd. v. Pryor*, 2006 WL 1817572 (S.D.N.Y. June 30, 2006) *("Grand River VI")*; *Grand River Enters. Six Nations, Ltd. v. Pryor*, 2006 WL 1517603 (S.D.N.Y. May 31, 2006) *("Grand River V")*; *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158 (2d Cir.2005) *("Grand River IV")*, cert. denied sub nom. *King v. Grand River Enters. Six Nations, Ltd.*, —— U.S. ——, 127 S.Ct. 379, 166 L.Ed.2d 267 (2006); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 2004 WL 2480433 (S.D.N.Y. Nov.3, 2004) *("Grand River III")*; *Grand River Enters. Six Nations, Ltd. v. Pryor*, 2004 WL 1594869 (S.D.N.Y. July 15, 2004) *("Grand River II")*; *Grand River Enters. Six Nations, Ltd. v. Pryor*, 2003 WL 22232974 (S.D.N.Y. Sept.29, 2003) *("Grand River I")*.

Numerous other plaintiffs have brought similar challenges to state statutes passed in conjunction with the multi-state settlement, both in our circuit, *see, e.g., Freedom Holdings v. Spitzer*, 408 F.3d 112 (2d Cir.2005), and in several of our sister circuits, *see, e.g., Tritent*

*Int'l Corp. v. Kentucky*, 467 F.3d 547 (6th Cir.2006); *Xcaliber Int'l Ltd. v. Ieyoub*, 377 F.Supp.2d 567 (E.D.La.2005), *rev'd in part on other grounds sub nom. Xcaliber Int'l Ltd. v. Foti*, 442 F.3d 233, 235 (5th Cir.2006) (per curiam); *Mariana v. Fisher*, 226 F.Supp.2d 575 (M.D.Pa.2002), *aff'd on other grounds*, 338 F.3d 189 (3d Cir.2003); *Star Scientific v. Beales*, 278 F.3d 339 (4th Cir.2002); *North Am. Trading Co. v. Nat'l Ass'n of Att'ys Gen.*, (D.D.C. Sept. 18, 2001), *aff'd on other grounds*, 2002 WL 31667853 (D.C.Cir. Nov.25, 2002) (unpublished).

Moreover, Grand River itself has litigated similar claims in separate lawsuits, *see Grand River Enters. Six Nations, Ltd. v. Beebe*, 418 F.Supp.2d 1082 (W.D.Ark.2006). Because we affirm the district court on irreparable injury grounds, *see infra*, we do not here consider whether the doctrine of issue preclusion should apply with respect to the merits of Grand River's claims, either against Grand River or against any of the defendants in this case.

F.3d 506, 510 (2d Cir.2005) (citation and internal quotation marks omitted). We hold that the district court did not abuse its discretion in finding that Grand River failed to demonstrate sufficiently a likelihood of irreparable harm and, therefore, on that basis alone, affirm its denial of Grand River's motion.

## BACKGROUND

On November 23, 1998, forty-six states, along with the District of Columbia and five other U.S. territories ("settling states"), entered into a Master Settlement Agreement ("MSA") with the four major tobacco manufacturers operating in the United States—Philip Morris, R.J. Reynolds, Brown & Williamson, and Lorillard (the original participating manufacturers, or "OPMs"). The MSA resolved all pending lawsuits between the states and OPMs, and released the OPMs from liability in any future state-initiated lawsuits relating to cigarette sales. *See Grand River IV,* 425 F.3d at 162. Under the MSA, the OPMs agreed, *inter alia,* to internalize the health care costs created by their products, by making three sets of payments for a combined value of approximately $206 billion over twenty-five years. The payments of the OPMs—of which each settling state is entitled to a fixed percentage (that is, an "allocable share")—were to be adjusted each year to reflect a variety of considerations, including yearly changes in the volume of the OPMs' aggregate cigarette sales.

Each of the settling states had, by the year 2000, adopted model legislation—"Escrow Statutes"—intended to implement the settlement's terms. Under the Escrow Statutes, a non-OPM manufacturer selling cigarettes in a settling state must either (1) join the MSA as a subsequent participating manufacturer ("SPM") and become subject to the MSA's restrictions and payment structure, or (2) remain a non-participating manufacturer ("NPM"). Manufacturers that choose to continue as NPMs—or whose applications to join the MSA are not accepted—are required to establish, and make annual deposits into, an escrow or reserve account. Unlike OPMs and SPMs who make final payments into the settlement fund, NPMs retain title to the monies they deposit in their escrow fund. The Escrow Statutes, therefore, do not extract outright payments from NPMs, but rather create a pool of funds from which settling states may secure damage awards from NPMs for any successful cigarette-related claims. After twenty-five years, any funds remaining in the escrow account are to be restored to the NPM.

Grand River, a Canadian-incorporated NPM owned by First Nations members of the Iroquois Confederacy, commenced this action on July 1, 2002, against the Defendants–Appellees, the attorneys general of thirty-one states ("defendants"). Grand River's complaint attacks the MSA and its related state legislation, *inter alia,* on federal antitrust and dormant Commerce Clause grounds. Grand River alleges that the MSA implements and enforces a cartel in the United States cigarette market that has the purpose and effect of controlling—more precisely, raising—cigarette prices of manufacturers nationwide. This court, and a district court in our circuit, have held that Grand River's complaint states valid claims upon which relief could be granted. *See Grand River II,* 2004 WL 1594869, at *2–*3 (reinstating Grand River's Sherman Act claim); *Grand River IV,* 425 F.3d at 173 (denying defendants' motion to dismiss Grand River's Commerce Clause claim, and observing that "not dismissing this claim at the pleading stage is consistent with the district court's decision to reinstate the Sherman Act claim").

Because the Escrow Statutes initially contained an Allocable Share Release provision—which enabled Grand River to limit significantly its escrow obligations under the MSA—Grand River had not previously deemed it necessary to seek a preliminary injunction. The Allocable Share Release provision permitted the immediate release of funds from escrow whenever an NPM's deposits in a particular state exceeded the amount of monies the state would have received from the NPM as its allocable share, had the NPM been a party to the MSA. By limiting its sales to a small number of settling states, Grand River was able to obtain an immediate release of nearly all of its escrowed funds.

Beginning in 2003, however, state legislatures started to repeal their Allocable Share Release provisions, and adopted, instead, a model "Allocable Share Amendment."[2] Every settling state except Missouri had, by January 1, 2006, adopted the Amendment. As the district court below explained, the Amendment allows an NPM to receive an immediate release of escrow funds "only to the extent that its escrow payments in a given state exceed what the NPM would have owed to *all* states under the MSA, if the NPM had been an SPM." According to Grand River, the Allocable Share Amendments had the effect of increasing Grand River's escrow obligations ten-fold.

Escrow obligations under the Amendments were to begin, in at least one of the states in which Grand River principally operated, on April 15, 2006. Accordingly, on April 3, 2006, Grand River submitted an application to join the MSA as an SPM. Then, on April 13, 2006, Grand River moved, in the United States District Court for the Southern District of New York (Keenan, *J.*), to enjoin preliminarily the enforcement of the Allocable Share Amendments, or alternatively, to enjoin the defendants from denying Grand River's application to join the MSA. Grand River also moved to enjoin the defendants from banning sales in their states of cigarettes produced by Grand River.

On May 31, 2006, following four days of hearings, the district court issued an Opinion and Order denying Grand River's motion in its entirety. *Grand River V*, 2006 WL 1517603.

First, the district court found that Grand River would not suffer irreparable harm if the injunction of the Allocable Share Amendments it sought were denied. The court found (1) that, in the first place, Grand River only sold cigarettes in seven of the thirty-one states that were named as defendants, and Grand River could not enjoin the states in which it did not operate; (2) that Grand River was, as of that time, escrow-compliant in the seven states in which it did operate; (3) that "even if Grand River loses some competitive ground in the Settling States, it still sells cigarettes to Canada, Europe, Africa, Asia, and on Native American reservations"; (4) that, even if it were forced to raise its per-carton price by $4.29, Grand River would

---

**2.** The parties sharply disagree on the question of what motivated states to adopt the Allocable Share Amendment. Thus, Grand River presents evidence which tends to suggest that the settling states, in significantly raising NPMs' escrow obligations, intended to "protect" themselves "against increasing NPM sales." Because we do not reach the merits of Grand River's claims, *see infra*, there is no need to, and so we do not, describe those disagreements here. Nor do we express any opinion with regard to the district court's conclusions of law concerning Grand River's antitrust and Commerce Clause claims. As indicated above, we have previously held that Grand River stated valid claims on both these grounds, and we have not had occasion to review those claims with the benefit of a complete evidentiary record.

continue to be competitive in the markets in which it currently does business; and (5) that, to the extent Grand River wished to "strengthen its competitive position by reaching out to more Settling States," it probably could afford to deposit its back escrow of "at least $16,000,000," in light of the fact that Grand River had paid out sizeable bonuses to its shareholders between 2003 and 2005. *Grand River V*, 2006 WL 1517603, at *6–*7. The district court acknowledged that, in *Freedom Holdings, Inc. v. Spitzer*, 447 F.Supp.2d 230, 265 (S.D.N.Y.2004), *aff'd on other grounds*, 408 F.3d 112 (2d Cir.2005), District Judge Hellerstein had granted to a different plaintiff a preliminary injunction against the enforcement of New York's Allocable Share Amendment. Nevertheless, the district court concluded that "[t]he evidence in the instant case does not compel the same result." *Grand River V*, 2006 WL 1517603, at *6.

Second, the district court concluded that Grand River failed to establish a likelihood of success on the merits of either its federal antitrust or dormant Commerce Clause claim. As to the antitrust claim, the district court noted that "[a] recent decision by ... the United States District Court of the Western District of Arkansas may well bar Grand River's claims in this action under the doctrine of issue preclusion." *Id.* at *8 (citing *Grand River Enters. Six Nations, Ltd. v. Beebe*, 418 F.Supp.2d 1082 (W.D.Ark.2006)). The district court did not resolve that question, however, and instead stated that Grand River had failed to demonstrate that the Allocable Share Amendment likely constituted a *per se* Sherman Act violation under *Rice v. Norman Williams Co.*, 458 U.S. 654, 661, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982). *Grand*

*River V*, 2006 WL 1517603, at *8–*9.[3] Turning to Grand River's dormant Commerce Clause claims, the district court found that, while Grand River may have alleged a claim sufficient to survive a Rule 12(b)(6) motion to dismiss, *see Grand River IV*, 425 F.3d at 173, its allegations did not "establish a likelihood of success on the merits." *Grand River V*, 2006 WL 1517603, at *10.

Third, the district court denied Grand River's motion with respect to its application to join the MSA as an SPM. The district court held that, "[i]n spite of Grand River's best arguments, this is at bottom an [sic] request for a mandatory injunction." *Id.* at *7. Moreover, the district court noted that, because Grand River's obligations as an SPM would be greater than its obligations as an escrow-compliant NPM, "Grand River's stance smacks of pretext." *Id.* For these reasons, the district court concluded that "[t]here is no likelihood of irreparable harm arising out of [the] denial of Grand River's MSA application." *Id.*

Finally, the district court denied Grand River's motion to enjoin the defendants from banning sales in their states of cigarettes produced by Grand River. The district court stated that Grand River had failed to establish a likelihood of irreparable harm as to this request as well.

Grand River timely appealed the denial of its motion. In its briefing to us, Grand River argues that the district court abused its discretion in denying Grand River's motion to enjoin the enforcement of the Allocable Share Amendments. Grand River does not, however, meaningfully challenge the district court's rejection of the motion (1) to enjoin defendants from deny-

---

**3.** The district court, in light of its findings on the question of a *per se* violation under *Rice*, declined to reach the question of immunity

under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

ing Grand River's application to join the MSA, and (2) to enjoin the defendants from banning the sale of Grand River-produced cigarettes. Accordingly, Grand River has waived any possible arguments against these two components of the district court's decision. *See* Fed. R.App. P. 28(a)(9)(A). We, therefore, consider only Grand River's contentions regarding the Allocable Share Amendments.

## DISCUSSION

### I. *Standard of review*

■■■■■ "Where the party seeking the [preliminary] injunction attempts to enjoin application of a governmental regulation, it must demonstrate irreparable harm should the injunction not be granted and a likelihood of success on the merits." *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir.2006) (citations omitted). "Such relief, however, is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)) (internal quotation marks omitted). That is because the preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies." *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985).

■■■■■ "The district court has wide discretion in determining whether to grant a preliminary injunction, and this Court reviews the district court's determination only for abuse of discretion." *Moore*, 409 F.3d at 511 (citing *Green Party of N.Y. v. N.Y. State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir.2004)). Such abuse of discretion "usually consists of clearly erroneous findings of fact or the application of an incorrect legal standard." *Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2d Cir.2003). And, importantly, in analyzing whether the district court abused its discretion, "we may affirm on any ground supported by the record." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir.2005) (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir.2004)) (internal quotation marks omitted).

### II. *Analysis*

Grand River's argument on appeal is that the district court abused its discretion in denying Grand River's motion to enjoin preliminarily enforcement of the Allocable Share Amendments. Specifically, Grand River contends that it has convincingly demonstrated (1) that it is likely to suffer irreparable harm if the Allocable Share Amendments are enforced, and (2) that it is likely to prevail on the merits of its federal antitrust and dormant Commerce Clause claims.

#### A. *The standards governing our "irreparable harm" analysis*

■■■■■ As we have recently explained,

To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer "an injury that is neither remote nor speculative, but actual and imminent," and one that cannot be remedied "if a court waits until the end of trial to resolve the harm."

*Freedom Holdings*, 408 F.3d at 114 (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir.1999)). Moreover, we have stated that "[i]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction," and that, accordingly, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."

*Id.* (internal quotation marks and citation omitted).

Because we conclude that the district court did not clearly err in finding that Grand River failed to demonstrate that it was likely to suffer an irreparable, actual and imminent injury, we affirm, on that basis alone, that court's denial of Grand River's motion for a preliminary injunction.

*B. Grand River has failed to establish a likelihood of irreparable harm*

According to Grand River, its escrow liability for 2006 sales is $43 million. Grand River contends that, if it must tie up that amount of money by placing it in escrow for 2006 and similarly for each subsequent year, it will be forced to raise the price of its cigarettes by approximately $4.29 per pack. And, Grand River asserts, if it raises its prices by that amount, it will cease to be competitive in the markets in which it operates, and therefore will lose a significant amount of its "market share, goodwill, and business relationships that it has developed over the past six years in connection with the sale of its products." But if it does not raise its prices, "Grand River accrues and incurs an escrow liability under the Amendment for 2006 sales in the approximate amount of $4.29 per carton, which it cannot pay." And, if it fails to make the required escrow deposits, Grand River's products will be "subject to an immediate and permanent ban from sale."

■ We find that the district court's treatment of these arguments was flawed in one respect. Specifically, the district court erroneously suggested that Grand River's loss of its presence in the U.S. market would not constitute an irreparable harm, simply because it *also* sells cigarettes internationally and on Native American reservations. To the extent the dis-

trict court relied on such reasoning, it was in error. It is well-established that a movant's loss of current or future market share may constitute irreparable harm. *See Freedom Holdings,* 408 F.3d at 114–15; *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.,* 290 F.3d 578, 596 (3d Cir. 2002) ("In a competitive industry where consumers are brand-loyal, . . . [the] loss of market share is a potential harm which cannot be redressed by a legal or an equitable remedy following a trial." (internal quotation marks and citation omitted)). And if a plaintiff demonstrates, by pointing to a meaningful loss of market share, a likelihood of irreparable harm in one of the markets in which it operates, such a showing is not undermined by the fact that the plaintiff happens to operate in other markets as well.

■ Nonetheless, and despite this particular mistake, we hold that the district court's irreparable harm finding was not an abuse of discretion. After reviewing the record evidence, the district court expressly found that, even if Grand River were obliged to raise its per-carton price by $4.29, its wholesale prices would still be comparable to, or even lower than, those of other cigarette brands with which Grand River competes. *Grand River V,* 2006 WL 1517603, at *4. In apparent reliance upon that factual finding, the district court concluded that "[e]nforcement of the escrow requirements in the Allocable Share Amendment does not deprive Grand River of its ability to compete effectively in the market." *Id.* at *6. While it is true, as Grand River asserts, that the district court based its factual finding on a single "pricing sheet that an importer of Grand River's products compiled after questioning wholesalers in one MSA State—Tennessee," this argument does not undermine the district court's finding, because the

burden of proof and persuasion rested squarely on Grand River. To the extent that there was a dearth of evidence, Grand River is to blame. Consequently, Grand River should not now be allowed to complain that the district court relied on the limited evidence that *was* provided.

 Furthermore, and as noted above, "we may affirm on any ground supported by the record," *Freedom Holdings*, 408 F.3d at 114 (internal quotation marks omitted). On review of the record, we conclude that Grand River has failed to establish that it is unable to "sell at the desired competitive price ... by securing a loan" which could be "recompensed after trial," *id.* at 115. Although Grand River argues "that no lending institution would loan Grand River the $43 million needed to pay [the 2006 sales] escrow liability, or any escrow liability approaching that amount in any year thereafter," we believe that Grand River's evidence does not come close to proving this fact. Indeed, the only evidence that Grand River offered in support of this contention was a letter from the Royal Bank of Canada ("RBC"), in which the RBC advised Grand River that it would be unwilling to underwrite a loan or series of loans to cover Grand River's escrow liability for the full twenty-five year period during which escrow funds must be withheld. But there is no indication in the letter that the RBC would be unwilling to loan Grand River a smaller amount of money solely to cover some or all of its escrow obligations while it litigates this case. *See Freedom Holdings*, 408 F.3d at 115 (observing that there was no likelihood of irreparable harm because the movant could obtain a loan which could

be "recompensed *after trial*" (emphasis added)). Thus, Grand River—on whom the burden of proof and persuasion rested—has failed to establish an inability to obtain a short-term loan. Given this failure—and in light of the district court's finding that Grand River could remain competitive even without a loan—we cannot say that the district court clearly erred in holding that Grand River failed to demonstrate a likelihood of irreparable harm stemming from the enforcement of the Allocable Share Amendments.[4]

## CONCLUSION

Because we conclude that the district court did not abuse its discretion in finding that Grand River failed to demonstrate a likelihood of irreparable harm, there is no need for us to consider the merits of Grand River's federal antitrust and dormant Commerce Clause claims. The finding of no showing of irreparable harm is dispositive. Therefore, and on that basis, the district court's denial of Grand River's motion for a preliminary injunction is AFFIRMED.

---

**4.** We also conclude that the district court did not clearly err in finding that Grand River has no interest in enjoining any of the states in which it does not currently operate. Grand River offered no compelling evidence of concrete plans, or desires, to expand its operations into those states. Nor did the district court clearly err in finding that Grand River could afford to satisfy its back escrow, if it *were* to decide to expand into other settling states.