**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 3, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARY ANN SCHOENHOFER;
AUTUMN L. JOHNSON; RALPH
ROGERSON,

     Plaintiffs - Appellants,

v.

No. 16-3226

JACKIE McCLASKEY, in her official
capacity as Secretary of the Department of
Agriculture of the State of Kansas,

     Defendant - Appellee.
_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:16-CV-01023-JTM-GEB)**
_____

James T. McIntyre, Law Offices of James T. McIntyre, Wichita, Kansas, for Plaintiffs-Appellants.

John Wesley Smith, Assistant Attorney General, Office of the Attorney General Derek Schmidt, Topeka, Kansas, for Defendant-Appellee.
_____

Before **HARTZ**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

     Plaintiff Ralph Rogerson, a licensed pest-control applicator in Kansas, challenges

a regulation of the Kansas Department of Agriculture, Kan. Admin. Regs. § 4-13-26

(2003), on the ground that it requires excessive pesticide treatment in preconstruction applications.[1]  He filed suit for declaratory and injunctive relief against the Secretary of the Department, claiming that the regulation (1) is preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136–136y, because it conflicts with pesticide labels approved by the Environmental Protection Agency (EPA), and (2) is preempted by the Sherman Antitrust Act, 15 U.S.C. § 1, because it limits consumer choice and competition through retail price maintenance.  The United States District Court for the District of Kansas rejected both claims, and Plaintiff appeals.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.  The Kansas regulation is neither expressly nor impliedly preempted by FIFRA.  And Plaintiff has conceded the absence of an essential element of his Sherman Act claim.

## I.    DISCUSSION

The Kansas regulation requires both horizontal and vertical application of termite pesticides in preconstruction areas.  It states in full:

> In addition to the requirements of the label, each preconstruction
> application of pesticide for the control of termites *shall* consist of
> establishing both horizontal and vertical chemical barriers, as specified in
> this regulation.
> (a) Horizontal chemical barriers shall be established in areas intended to be
> covered, including the soil beneath slab floors and porches, footing trenches
> for monolithic slabs, and the soil beneath stairs.
>
> (b) Vertical chemical barriers shall be established in the soil around the
> base of foundations, plumbing fixtures, foundation walls, support piers, and

---

[1]  Two other plaintiffs, Mary Ann Schoenhofer and Autumn L. Johnson, were dismissed by the district court for lack of standing.  They do not challenge that ruling on appeal.

voids in masonry, and any other critical areas where structural components extend below grade.

Kan. Admin. Regs. § 4-13-26 (emphasis added). According to Plaintiff, however, pesticide labels approved by the EPA under FIFRA do not require both horizontal and vertical application, nor do they require application to as many areas as the regulation requires. For example, as Plaintiff put it, an approved "label for I Maxx Pro [a pesticide used by Plaintiff] . . . gives the applicator discretion to . . . conduct either vertical or horizontal or both treatments," and "states that only construction objects such as pipes which penetrate the slab need treatment." Aplt. Br. at 13–14.[2] Also, he points out that the label, in accordance with the command of 40 C.F.R. § 156.10(i)(2)(ii), states: "It is a violation of Federal law to use this product in a manner inconsistent with its labeling." Pls.' Resp. to Def.'s Mot. to Dismiss at Ex. 3, Aplt. App. at 71. He complains that the Kansas regulation (1) endangers humans and the environment because it requires

---

[2] Regarding horizontal and vertical application, the label states: "The purpose of chemical soil treatment for termite control is to establish a continuous chemical treated zone *(horizontal and/or vertical as needed)* between the wood and other cellulose material in the structure and the termite colonies in the soil." Pls.' Resp. to Def.'s Mot. to Dismiss at Ex. 3, Aplt. App. at 72 (emphasis added). As for what areas to treat, the label states:

> Apply an overall treatment to the entire surface of soil or other substrate to be covered by the slab including areas to be under carports, porches, basement floor, and entrance platforms. . . . In addition, apply 4 gallons of solution (see APPLICATION VOLUME) per 10 linear feet to provide a uniform treated zone in soil at critical areas such as along the inside of foundation walls, and around plumbing, bath traps, utility services, and other features that will penetrate the slab.

*Id.*

unnecessary use of dangerous pesticides, and (2) stifles competition by requiring all applicators to apply too much pesticide when some applicators could reduce their prices by applying only necessary pesticide.

Plaintiff raises two legal challenges to the regulation. Under FIFRA he contends that the regulation is preempted by federally approved labels for pesticides because it imposes stricter use requirements on pesticide applicators. And under the Sherman Antitrust Act he contends that the regulation is preempted because it is a covert price regulation that forces consumers to pay for unnecessary treatments and prohibits applicators from competing against each other (since all are required to offer the same unnecessary services).

## A. FIFRA Claims

FIFRA is a "comprehensive regulatory statute" that regulates the sale, labeling, and use of pesticides. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 437 (2005) (internal quotation marks omitted). When a manufacturer wants to register a pesticide, FIFRA requires that a proposed label and supporting information be submitted to the EPA. *See id.* at 438 (citing 7 U.S.C. § 136a(c)(1)(C), (F)). The EPA will register the pesticide if the manufacturer meets certain conditions, such as showing that the product is effective and "will not cause unreasonable adverse effects on humans and the environment." *Id.* (citing § 136a(c)(5)(A), (C), (D); § 136(bb)). The States, within limits, can also play a role. *See id.* at 439. "A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the

4

regulation does not permit any sale or use prohibited by this subchapter." 7 U.S.C. § 136v(a). Further, "A State [under certain circumstances] may provide registration for additional uses of federally registered pesticides . . . ." 7 U.S.C. § 136v(c)(1). For labeling, however, the statute requires national uniformity: "[A] State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b); *see Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.*, 617 F.3d 207, 214 (3d Cir. 2010) ("the states have joint control with the federal government in regulating the sale and use of pesticides with only the exception of the EPA's exclusive supervision of labeling"). The reason for requiring uniformity in labeling, but not in other subjects of regulation, is a pragmatic one. State-by-state variation in how a pesticide is sold or used does not create any significant inconvenience. But not so for labeling requirements. As the Supreme Court expressed the point, "[I]magine 50 different labeling regimes prescribing the color, font size, and wording of warnings—that would create significant inefficiencies for manufacturers." *Bates*, 544 U.S. at 452.

Plaintiff appears to raise two preemption arguments. One is based on the prohibition in § 136v(b) against "any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." Plaintiff contends that this prohibition applies to the Kansas regulation because it is a labeling requirement, *see* Aplt. Br. at 16 (the Kansas regulation "is in essence a labeling requirement, since it controls the areas and structures to be treated in a manner which is inconsistent with the labels

5

approved by the EPA"), and requires variations from the federal requirements. We disagree. The prohibition in § 136v(b) does not apply here. The Supreme Court has described the limits on "labeling or packaging" preemption:

> For a particular state rule to be pre-empted, it must satisfy two conditions. First, it must be a requirement "*for labeling or packaging*"; rules governing the design of a product, for example, are not pre-empted. Second, it must impose a labeling or packaging requirement that is "*in addition to or different from* those required under this subchapter."

*Bates*, 544 U.S. at 444. Though Plaintiff devotes most of his attention to the second condition, the first is not satisfied.

FIFRA defines *label* as "the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers." 7 U.S.C. § 136(p). And it defines *labeling* as "all labels and all other written, printed, or graphic matter--(A) accompanying the pesticide or device at any time; or (B) to which reference is made on the label or in literature accompanying the pesticide or device, except to [various described] current official publications." *Id.*

Under these definitions—or common usage for that matter—the Kansas regulation does not govern labeling. It governs use. It instructs termite-pesticide applicators how and where to apply the pesticide. It does not say a word about what to put in any "written, printed, or graphic matter" connected with a pesticide. The Supreme Court in *Bates* provided examples of rules not affected by § 136v(b):

> Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express

6

warranties or other contractual commitments plainly do not qualify as requirements for "labeling or packaging." *None of these common-law rules requires that manufacturers label or package their products in any particular way.*

*Bates*, 544 U.S. at 444 (emphasis added). The Kansas regulation is even further removed from the mandate of § 136v(b) because the regulation is addressed to those who apply pesticides—not to the manufacturers who package or label them. Recall that the need for national uniformity in labels and labeling is to avoid the "significant inefficiencies" if a manufacturer had to produce a different label on its product for each State. *Id.* at 452. There is no need for such stringent uniformity with respect to applicators, who can readily adjust their operations for each State.

Alternatively, Plaintiff appears to argue that, apart from the express preemption language in § 136v(b), the state regulation is impliedly preempted. State law can be impliedly preempted when it conflicts with federal law. *See Arizona v. United States*, 567 U.S. 387, 399 (2012). "This includes cases where compliance with both federal and state regulations is a physical impossibility, and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citation and internal quotation marks omitted). Preemption is not lightly inferred. *See id*. at 400.

Plaintiff's argument is quite limited, contending only that the Kansas regulation is preempted by FIFRA because it "requires more pesticide use than the [EPA-approved] label," Aplt. Br. at 18, and its "requirements . . . are . . . in fact inconsistent with the uses

approved by the EPA," *id.* at 21. Though somewhat unclear, he also may be arguing that the regulation is preempted because it requires "additional uses" that have not been approved by the EPA. *Id.* at 19.[3] All these arguments fail for a common reason: every use required by the regulation is permitted by the label that Plaintiff relies on.

Even assuming that an EPA-approved label could preempt state law,[4] the conflict alleged by Plaintiff does not exist. As mentioned earlier, Plaintiff argues that the Kansas

---

[3] In addition, Plaintiff may be arguing that the presence of the Kansas regulation has somehow resulted in an independent violation of FIFRA by "causing misbranding of the product." Aplt. Br. at 19. But he has not sufficiently developed the argument to require our review. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (undeveloped arguments insufficient to preserve appellate review). He utterly fails to tie the regulation to FIFRA's definition of *misbranded* in 7 U.S.C. § 136(q).

[4] It is not clear that EPA-approved labels can preempt state laws on their own; if anything, *Bates* suggests the opposite. It identified only two sources of preemption: FIFRA itself and any implementing regulations. *See Bates*, 544 U.S. at 452 ("[Section 136v(b)] . . . pre-empts any statutory or common-law rule that would impose a labeling requirement that diverges from those set out in FIFRA and its implementing regulations."). Indeed, the Court remarked: "At present, *there appear to be relatively few regulations that refine or elaborate upon FIFRA's broadly phrased misbranding standards.* To the extent that EPA promulgates such regulations in the future, they will necessarily affect the scope of pre-emption under § 136v(b)." *Id.* at 453 n.28 (emphasis added). It gave no indication that state rules could be preempted by federal labels alone. Accordingly, some lower courts have stated that EPA approval of a product label likely does not carry preemptive force. *See Indian Brand Farms*, 617 F.3d at 222 ("[T]he remand [in *Bates*] established that mere inconsistency between the duty imposed by state law and the content of a manufacturer's labeling approved by the EPA at registration did not necessarily mean that the state law duty was preempted."); *see also Hernandez v. Monsanto Co.*, No. CV 16-1988-DMG (EX), 2016 WL 6822311, at *6 (C.D. Cal. July 12, 2016) ("In noting that the 'relevant EPA regulations that give content to FIFRA's misbranding standards' have preemptive effect, the *Bates* Court appears to have been referencing the EPA-promulgated regulations themselves, not the administrative determinations made in approving a registration." (quoting *Bates*, 544 U.S. at 453)); *Hardeman v. Monsanto Co.*, No. 16-CV-00525VC, 2016 WL 1749680, at *2 (N.D. Cal.

regulation conflicts with a label for I Maxx Pro, because it (1) limits the discretion of the applicator in applying vertical and horizontal treatments and (2) requires the treatment of additional surfaces. But the label does not forbid both vertical and horizontal treatments. Rather, as Plaintiff himself describes the label, it "gives the applicator discretion to . . . conduct either vertical or horizontal or both treatments." *Id.* at 13. And although the label directs the applicator to treat "construction objects such as pipes which penetrate the slab," *id.* at 14, it does not forbid application to other objects. Thus, even though the regulation and label are not congruent, the applicator can comply with both.[5] We therefore reject Plaintiff's claim of preemption by FIFRA.[6]

---

Apr. 8, 2016) ("Of course, if the EPA's approval of Roundup's label had the force of law, it would preempt conflicting state-law enforcement of FIFRA. . . . But there's no indication that the EPA's approval of Roundup's label had the force of law." (citation omitted)).

[5] We also note that the statutory provisions governing pesticide use permit state departures from the applicable federal regulations. Both § 136v(a) and § 136v(c)(1) expressly allow States to authorize, under certain circumstances, uses that deviate from those approved by the EPA. *See Bates*, 544 U.S. at 450 ("Most significantly, States may ban or restrict the uses of pesticides that EPA has approved, § 136v(a); they may also register, subject to certain restrictions, pesticides for uses beyond those approved by EPA, § 136v(c).").

[6] In addition, the Maxx Pro label deferred to local law. One section of the label begins: "Treatment standards for subterranean termite control may vary due to *regulations*, treatment procedures, soil types, construction practices and other factors." Pls.' Resp. to Def.'s Mot. to Dismiss at Ex. 3, Aplt. App. at 72 (emphasis added). And the label further directs the applicator to "[f]ollow all federal, state, and local regulations and treatment standards for protection of a structure from termites." *Id.*

**B. Sherman Act Claim**

The Sherman Act provides in relevant part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The Act has not been construed literally. As the Supreme Court has explained: "[A] judicial gloss on this statutory language has established the 'rule of reason' as the prevailing standard of analysis. Under this rule, the fact-finder weighs all of the circumstances of the case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Cont'l T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 49–50 (1977) (citation omitted). A rule-of-reason analysis is unnecessary, however, for limited categories of "per se" violations of the Act. These "are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Id.* at 50 (internal quotation marks omitted).

Although the Sherman Act contains no express preemption language, the Supreme Court has held that a state law is preempted if, and *only* if, it is the type of restriction on economic freedom that always violates the Act:

> [A] state statute should be struck down on pre-emption grounds only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute.

10

*Fisher v. City of Berkeley,* 475 U.S. 260, 265 (1986) (internal quotation marks omitted).

That is, "[s]uch condemnation will follow under § 1 of the Sherman Act when the

conduct contemplated by the statute is in all cases a *per se* violation." *Rice v. Norman*

*Williams Co.*, 458 U.S. 654, 661 (1982). This standard reflects ordinary conflict-

preemption principles. *See id.* at 659 ("As in the typical pre-emption case, the inquiry is

whether there exists an irreconcilable conflict between the federal and state regulatory

schemes."). And it "[r]ecogniz[es] that the function of government may often be to

tamper with free markets." *Fisher*, 475 U.S. at 264.

Our analysis of Plaintiff's claim can be brief. He acknowledges the per se

requirement for preemption. And he concedes that in light of recent Supreme Court

authority, "even if the effect of the proposed regulation is to reduce consumer choice and

maintain retail prices, such conduct is no longer a *per se* violation." Aplt. Br. at 23–24.

There is nothing left for us to decide. Plaintiff raises a rule-of-reason challenge to the

regulation; but, to repeat, analysis of that challenge requires "weigh[ing] all of the

circumstances of the case," *Continental T.V.,* 433 U.S. at 49, and that is a process not

available in a preemption challenge to state law, *see Fisher*, 475 U.S. at 265.[7] We affirm

the district court's dismissal of Plaintiff's claim under the Sherman Act.

---

[7] Plaintiff may be making two final arguments under state law. He asserts that Kansas law does not grant the Kansas Department of Agriculture a license to engage in economic regulation. He also asserts that the Department did not prepare, as required by Kansas statutory law, either an economic or an environmental impact study before promulgating the regulation at issue in this case. We do not consider these arguments because he does

## II.    CONCLUSION

We **AFFIRM** the judgment of the district court.

---

not advance any state-law claims.  And he fails to explain how the federal claims that he has brought can be construed to reach these issues.